## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

v.

## WESTINGHOUSE ELECTRIC CORPORATION, Appellant.

### No. 86–1226.

United States Court of Appeals, Third Circuit.

Argued Oct. 20, 1987.

Decided Feb. 2, 1989.

Certiorari Granted Oct. 2, 1989.

On Remand from the Supreme Court of the United States Oct. 2, 1989.

Argued on Remand from the Supreme Court Jan. 16, 1990.

Decided July 5, 1990.

Jerome J. Shestack (argued), Deena Jo Schneider, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., and Andrew M. Kramer, and Patricia A. Dunn, Jones, Day, Reavis & Pogue, Washington, D.C., for appellant.

Vella M. Fink (argued), E.E.O.C., Washington, D.C., for appellee.

Ann Elizabeth Reesman, McGuiness & Williams, Washington, D.C., for amicus curiae, Equal Employment Advisory Council on behalf of appellant.

Cathy Ventrell–Monsees, American Ass'n of Retired Persons, Washington, D.C., for amicus curiae, American Ass'n of Retired Persons on behalf of appellee.

Before HIGGINBOTHAM, Chief Judge, and SCIRICA and GARTH, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

This appeal arises from an action by the Equal Employment Opportunity Commission ("EEOC") against Westinghouse Electric Corp. based on the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1982 & Supp. V 1987), which prohibits employers from discriminating on the basis of age with respect to an employee's compensation, terms, conditions, or privileges of employment, *id.* § 623(a)(1). Following a bench trial, the district court found that Westinghouse had willfully violated ADEA through the use of discriminatory severance plans, and enjoined Westinghouse from denying severance pay to retirement-eligible employees. *E.E.O.C. v. Westinghouse Electric Corp.*, 632 F.Supp. 343 (E.D.Pa.1986). On appeal, we affirmed the district court's determination that the plans violated ADEA but remanded for re-evaluation of the finding that Westing-

house had acted willfully. *E.E.O.C. v. Westinghouse Electric Corp.*, 869 F.2d 696 (3d Cir.1989) ("*Westinghouse II*"). On October 2, 1989, the Supreme Court vacated our decision and remanded this case for further consideration in light of *Public Employees Retirement System of Ohio v. Betts*, — U.S. —, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). *Westinghouse Electric Corp. v. E.E.O.C.*, — U.S. —, 110 S.Ct. 37, 107 L.Ed.2d 7 (1989). Upon review, we hold that our original decision cannot stand in light of the standards announced in *Betts*. We believe that *Betts* has significantly altered the ADEA landscape on employee benefit plans. Therefore, we will reverse the district court's judgment against Westinghouse.[1]

## I.

The facts of the case are fully set forth in our prior opinion. In brief, the 1979 Westinghouse severance plan denied severance pay to laid-off employees who were eligible for retirement. Under the 1982 plan, retirement-eligible employees could elect either severance pay or retirement benefits but not both in the event of a layoff.

In *Westinghouse II*, we held that both plans discriminated on the basis of age in violation of ADEA. 869 F.2d at 699. We concluded that the district court had not erred in finding that under each plan, retirement-eligible employees were treated less favorably than younger employees, and that this less favorable treatment was based on age. *Id.* at 705–09. Moreover, we held that the district court correctly determined that the plans were not part of an integrated company plan to prevent "double-dipping." *Id.* at 707. Thus, Westinghouse had failed to set forth a legitimate, nondiscriminatory justification for the disparate treatment of retirement-eligible employees.

In addition, we held that the plans were not exempt under § 4(f)(2) of ADEA, 29

---

**1.** Apparently EEOC recognizes the impact of *Betts* because the Commission requested a stay of these proceedings pending action by Congress to reverse *Betts*. By order dated January 3, 1990, we denied the motion.

U.S.C. § 623(f)(2). 869 F.2d at 711. Section 4(f)(2) exempts any bona fide employee benefit plan that is not a subterfuge to evade the purposes of ADEA so long as the plan does not require or permit involuntary retirement.[2] We decided that the severance plans were not part of an integrated employee benefit scheme because, we concluded, severance pay is a fringe benefit, different in purpose from retirement benefits, for which retirement benefits cannot substitute. *Id.* at 710 (citing *E.E.O.C. v. Westinghouse Electric Corp.*, 725 F.2d 211, 225 (3d Cir.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984) ("*Westinghouse I*")). Moreover, we found that the plans could not qualify for the exemption because they were not based on age-related cost factors. *Id.* (citing *E.E. O.C. v. City of Mt. Lebanon*, 842 F.2d 1480, 1491 n. 9 (3d Cir.1988), and *Westinghouse I*, 725 F.2d at 224). Thus, we did not reach the question whether the plans constituted a subterfuge. Finally, we remanded to the district court to reconsider the factors it relied upon in concluding that Westinghouse had acted willfully. *Id.* at 714.

In *Betts*, the Supreme Court addressed the question whether the § 4(f)(2) exemption applied to a disability retirement plan that was available only to employees who retired before reaching age sixty. The Court declined to decide the precise meaning of the phrase "any bona fide employee benefit plan, such as a retirement, pension, or insurance plan," found in § 4(f)(2). 109 S.Ct. at 2865 n. 6. The Court held, however, that the statutory language does not limit the exemption to "plans in which all age-based reductions in benefits are justified by age-related cost considerations." *Id.* at 2864–65 (rejecting *Westinghouse I*, 725 F.2d at 224). Moreover, the Court decided that the EEOC regulation, which

provides that a plan is "not a subterfuge" only if lesser benefits are justified by age-related cost factors, 29 C.F.R. § 1625.10(d) (1988), was contrary to the plain language of the statute and invalid. 109 S.Ct. at 2863, 2865 (rejecting *Mt. Lebanon*, 842 F.2d at 1489).

The Court reached several conclusions regarding the precise meaning of "subterfuge" in § 4(f)(2). First, it reaffirmed its holding in *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977), that an employee plan adopted prior to the enactment of ADEA cannot be a subterfuge. 109 S.Ct. at 2861. The Court noted, however, that to the extent a post-ADEA provision of a plan "increased the age-based disparity caused by the pre-Act age limitation, *McMann* does not insulate it from challenge." *Id.* 109 S.Ct. at 2862.

Second, the Court reiterated its statement in *McMann* that " 'subterfuge' means 'a scheme, plan, stratagem, or artifice of evasion,' which, in the context of § 4(f)(2), connotes a specific 'intent ... to evade a statutory requirement.' " *Id.* 109 S.Ct. at 2863 (quoting *McMann*, 434 U.S. at 203, 98 S.Ct. at 450).

Third, the Court noted that a post-Act plan cannot be a subterfuge unless "it discriminates in a manner forbidden by the substantive provisions of the Act." *Id.* 109 S.Ct. at 2865–66. Noting that any benefit plan that discriminates against older workers would violate § 4(a)(1) (employers prohibited from discriminating on the basis of age with respect to compensation, terms, privileges of employment), the Court stated that both § 4(a)(1) and § 4(f)(2) could be given effect if § 4(f)(2) is viewed as exempting bona fide benefit plans that are not "a method of discriminating in other nonfringe-benefit aspects of the employ-

---

2. Section 4(f)(2) provides:
   It shall not be unlawful for an employer, employment agency, or labor organization—
   ....
   (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that

no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual; ...

29 U.S.C. § 623(f)(2) (1982 & Supp. V 1987).

ment relationship." *Id.* at 2866 (citing 29 U.S.C. § 623(a)(1), (f)(2)). The Court did not define "nonfringe benefit" but its use of the term makes clear that the terms "bona fide employee benefit plan" and "nonfringe benefit" are mutually exclusive. *See id.* at 2864, 2866.

Fourth, the Court stated that § 4(f)(2) does not establish a defense to liability under ADEA; rather, the section "redefines the elements of plaintiff's prima facie case." Thus, an employee who challenges a provision of a benefit plan under ADEA "bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some nonfringe-benefit aspect of the employment relation." *Id.* at 2868.

## II.

■ The *Betts* Court held that an employee plan adopted prior to the enactment of ADEA cannot be a subterfuge to evade the purposes of the Act. 109 S.Ct. at 2861 (citing *McMann*, 434 U.S. at 203, 98 S.Ct. at 450). As a threshold matter, we must determine whether this rule precludes a finding that the challenged provisions of the severance plans were a subterfuge.

ADEA was enacted on December 15, 1967 and became effective in June 1968. *See* Pub.L. No. 90–202, § 15, 81 Stat. 602, 607 (1967). Westinghouse adopted the severance pay plan that excluded retirement-eligible employees in 1960. Effective July 1982, the plan permitted retirement-eligible employees to choose between severance pay and retirement benefits in the event of a layoff.

Westinghouse contends that the district court erred in its subterfuge analysis because it failed to identify any post-ADEA provision that increased the age-based disparity already present in the challenged plans. EEOC argues that post-ADEA changes in the pension plan expanded the

group of retirement-eligible employees.[3] Thus, the group of employees ineligible for full participation in the severance plans has also expanded because the severance plans excluded or limited the participation of retirement-eligible employees. At issue is whether the post-ADEA expansion of the class of retirement-eligible workers "increased the age-based disparity caused by the pre-Act limitation" in the severance plans within the meaning of *Betts*. *See* 109 S.Ct. at 2862. We believe that it does. The factual circumstances of *Betts* and the cases cited therein are instructive.

In *Betts*, the Supreme Court held that a pre-ADEA plan provision, which limited disability retirement benefits to those who retired before reaching age 60, was insulated from challenge as a subterfuge. *Id.* (citing *McMann*, 434 U.S. at 203, 98 S.Ct. at 450). The Court noted, however, that the plaintiff had not challenged the plan's age–60 rule but rather a post-ADEA amendment, which guaranteed disabled retirees a minimum of 30% of their final average salary. The Court held that to the extent the amendment increased the age-based disparity, "the automatic rule of *McMann* [was] inapplicable." *Id.* The amendment at issue in *Betts* qualitatively improved the benefits available to those eligible for disability retirement, that is, those retiring before age 60. Thus, the change clearly increased the age-based disparity in available benefits.

In *E.E.O.C. v. Home Insurance Co.*, 672 F.2d 252 (2d Cir.1982), cited in *Betts*, the EEOC challenged a post-ADEA modification that lowered the mandatory retirement age in the company's pension plan from 65 to 62. The Second Circuit concluded that the existence of a pre-Act plan which arguably complied with ADEA could not "validate the post-Act modification to introduce new age-discriminatory terms." *Id.* at 259 & n. 9. The *Betts* Court also cited *E.E. O.C. v. County of Orange*, 837 F.2d 420

---

**3.** For example, the 1961 Pension Plan permitted employees to take early retirement after reaching age 60 with 10 years of service. App. at 1792. Under the 1973 Pension Plan, employees between the ages of 55 and 60 with 10 years of service were entitled to early retirement in the

case of location closedowns. App. at 1704. By 1979, early retirement was available to employees between the ages of 50 and 60 with 25 years of service when the layoff resulted from job movement or product line relocation. App. at 1599.

(9th Cir.1988), in which the EEOC challenged a pre-ADEA pension plan, rather than its post-ADEA amendments. Participation in the plan was limited to public safety employees who were under age 36 when hired. *Id.* at 421. The Ninth Circuit held that post-ADEA amendments, which added juvenile hall counselors to the list of eligible employees and exempted certain law enforcement personnel from the age requirement, did not convert the pre-ADEA plan into a subterfuge. *Id.* at 423 & n. 3. According to the court, post-ADEA modifications may convert a benefit plan into a subterfuge only if "significant or at least relevant to the challenged discriminatory practice." *Id.* at 423; *see also E.E.O.C. v. Cargill, Inc.,* 855 F.2d 682, 686 n. 4 (10th Cir.1988) (although plan has been amended since 1967, EEOC does not claim that amendments relate to challenged provisions; amendments do not convert plan into subterfuge).

In this case, EEOC challenges a severance plan provision that went into effect prior to ADEA but was amended in 1982. Westinghouse contends that the severance plan cannot be challenged as a subterfuge because the plan pre-dates ADEA and there have been no post-ADEA changes that increased the age-based disparity. As a preliminary matter, we note that the 1982 modification to the severance plan, which permitted older employees to choose between severance pay and retirement benefits, decreased rather than increased the age-based disparity present in the original plan.

Nonetheless, EEOC contends that post-ADEA changes in the pension plan, under which employees became eligible for retirement at a younger age in certain circumstances, increased the age-based disparity caused by the severance plans. One effect of the changes has been to expand the class of older employees who are ineligible for full participation in the severance plans. We believe that not all modifications which alter the pool of eligible employees will convert a pre-ADEA plan into a subterfuge. A plan provision that changes the pool on a basis unrelated to age is unlikely to increase the age-based disparity caused

by the pre-ADEA plan. *See, e.g., County of Orange,* 837 F.2d at 423 & n. 3 (amendment adding juvenile hall counselors to list of eligible employees does not convert pre-ADEA plan into subterfuge). In this case, however, the post-ADEA changes in the class of eligible employees are clearly age-based. This is so, not because the actual number of older employees excluded from full participation in the severance plans has increased, but rather because the modifications have progressively lowered the age at which older employees become ineligible for full participation in the severance plans. We believe that these progressive age-related changes in the pension plan have increased the age-based disparity caused by the severance plans within the meaning of *Betts. See Home Insurance Co.,* 672 F.2d at 259 & n. 9 (post-ADEA amendments lowered mandatory retirement age from 65 to 62; pre-ADEA plan cannot validate this modification to introduce new age-discriminatory terms).

We do not find it significant in this case that the modifications did not alter the terms of the severance plans directly. The definition of retirement eligibility contained in the pension plan determines whether an employee qualifies for participation in the severance plan. Thus, modifications to the definition directly affect the availability of severance pay. Under the circumstances, therefore, we conclude that the post-ADEA modifications to the pension plan increased the age-based disparity in the severance plans and that the plans may be challenged as a subterfuge to evade ADEA.

### III.

■ Even though we believe the Westinghouse plans may be challenged, we find that under the standards announced in *Betts,* the plans qualify for the exemption for "any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of [ADEA]," 29 U.S.C. § 623(f)(2). It is not disputed that Westinghouse observed the terms of the plans and that the plans are "bona fide" in that

they exist and pay benefits. *See Betts*, 109 S.Ct. at 2860.

The Supreme Court declined to define the precise meaning of "bona fide employee benefit plan such as a retirement, pension, or insurance plan." *Id.* at 2865 n. 6. The Court stated, however, that the inclusion of the terms "retirement, pension, or insurance" suggests an enumeration rather than an exclusive listing of plans that qualify for the exemption. *Id.* at 2864. The Court rejected the "age-related cost factor" test, upon which we relied in *Westinghouse II* to distinguish exempt plans, reasoning that the costs of many plans that fall within the listed categories do not increase with the age of the employee, citing defined contribution pension plans as an example. *Id.* The Court noted that a Department of Labor regulation, defining an employee benefit plan as one "which provides employees with what are frequently referred to as 'fringe benefits,'" was broad enough to encompass a variety of fringe benefits, regardless whether the cost of those benefits increased with age. *Id.* (quoting 29 C.F.R. § 1625.10(b) (1988)). Moreover, the Court stated that "Congress left the employee benefit battle for another day, and legislated only as to hiring and firing, wages and salaries, and other nonfringe-benefit terms and conditions of employment." *Id.* 109 S.Ct. at 2866.

Unlike wages and salaries, which are contingent on job performance, severance pay is linked to an employee's length of service and the occurrence of a layoff. Companies establish severance plans to provide short-term financial assistance during the transition period following layoff. Severance plans are available as a benefit to employees who remain with the company for a specified period. *See Westinghouse II*, 869 F.2d at 707. In light of the broad definition of "bona fide employee benefit

plan" endorsed by the Court in *Betts*, we must conclude that the plans may qualify for the § 4(f)(2) exemption so long as they are not intended as a subterfuge to avoid the purposes of ADEA.[4]

Prior to *Betts*, this court had held that the employer had the burden of disproving subterfuge by demonstrating that age-related cost factors required reduced benefits for older workers. *See Mt. Lebanon*, 842 F.2d at 1490. In *Betts*, however, the Supreme Court rejected the cost-justification requirement, 109 S.Ct. at 2863–64, and held that an employee who challenges a plan provision as a subterfuge has the burden of proving that the provision "actually was intended to serve the purpose of discriminating in some nonfringe-benefit aspect of the employment relation," *id.* at 2868.

EEOC contends that the severance plans discriminated against older workers with respect to recall and transfer rights,[5] and required older workers to retire involuntarily. EEOC suggests that remand to the district court may be necessary to permit full development of the record on these issues in light of the standards announced in *Betts*. Westinghouse argues that the district court ruled against EEOC on recall rights and involuntary retirement and that further consideration of those claims is now barred because EEOC failed to appeal or cross-appeal from the judgment.

■ In its amended complaint, EEOC claimed that Westinghouse violated ADEA by, among other things, "forcing laid off employees to retire prior to age 70 because [severance pay] was not available," and "denying recall to work to employees who were laid off and forced to retire." Second Amended Complaint, ¶ 7. The district court found that EEOC's claims implicated eight Westinghouse employment plans and practices. 632 F.Supp. at 351.[6] The court

---

**4.** We note that EEOC has not argued against a designation of the severance plans as "bona fide employee benefit plans" in its brief or at oral argument.

**5.** Neither party contests the designation of recall and transfer rights as nonfringe benefits. In light of our ultimate decision, we assume without deciding that the parties are correct.

**6.** As viewed by the district court, the eight challenged practices were:
(1) pre-July, 1982, arrangements for pensions and layoff income benefits, (2) post-July, 1982, arrangements for pensions and layoff income benefits, (3) arrangements for management employees, (4) Advanced Retirement Plan I, (5) Advanced Retirement Plan II, (6) an "impact number" process of awarding

"uph[e]ld the Westinghouse practices, other than denial of severance pay," *id.* at 350, and entered judgment "in favor of plaintiff and against defendant on the [severance plan] issues and in favor of defendant and against plaintiff on the other claims....," *id.* at 373. It seems to us that the recall rights and involuntary retirement claims, as set out in the complaint, have their basis in the allegedly discriminatory application of the severance plans. Thus, to the extent that the district court ruled in favor of EEOC on the severance plan issues, it can hardly be said that the judgment constituted a ruling against EEOC on those claims. By enjoining Westinghouse from denying severance pay to retirement-eligible workers, *see id.*, the district court effectively eliminated the basis upon which recall rights allegedly were denied and older workers allegedly were forced to retire. Similarly, in ruling "against plaintiff on the other claims," we think the district court was merely reiterating its decision to uphold the other challenged Westinghouse practices. Therefore, we do not believe that EEOC should now be penalized for failing to appeal a judgment, which in relevant part, favored it.

▆▆▆ Although we find that EEOC is not barred procedurally from asserting its claims, we do not believe that remand to the district court is necessary.[7] For reasons we will now discuss, we find that the evidence presented at trial is sufficient to establish that the severance plans did not discriminate against older workers with respect to recall or transfer rights. Moreover, we hold that Congress did not intend

the prohibition against involuntary retirement contained in § 4(f)(2) to apply to the facts presented in this case.

Westinghouse contends that all laid-off employees had recall rights and that only those who terminated their layoff status—by choosing to receive pension pay or immediate lump sum severance pay—lost their right to be recalled to work.[8] A younger laid-off employee could lose recall rights by choosing immediate lump sum severance. Thus, according to Westinghouse, the severance plans did not discriminate against older employees with respect to recall rights.

Prior to 1982, retirement-eligible employees were excluded from participation in the severance plan. Therefore, they could maintain recall rights only by foregoing all income during layoff. Under the 1982 plan, retirement-eligible employees could choose between severance pay and retirement benefits. Thus, recall rights were available to those who chose severance pay, although possibly at the expense of vested early retirement benefits. *See Westinghouse II*, 869 F.2d at 708 n. 18 ("It is not clear that upon recall the older employee, like the younger employee, retains the option to elect early retirement.").

We recognize that the options available to older employees were less desirable than the options available to younger employees, who could maintain recall rights without sacrificing present income or vested retirement benefits. After *Betts*, however, this is not the focus of the subterfuge inquiry. The severance plans could not have been a subterfuge for purposes of § 4(f)(2) unless

---

special benefits to certain employees laid off as a result of location shutdowns, product line relocations, or job movements, (7) limitation of retirement benefits to those actually eligible at the time of layoff, and (8) limitation of death prior to retirement benefits to spouses of employees actually eligible for the benefits at the time of death.
632 F.Supp. at 351.

7. EEOC contends that "[f]oreclosing the Commission from advancing these arguments in its favor would create a serious issue as to whether *Betts* should be applied retroactively to Westinghouse's plans under the three-part test developed in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296

(1971)." We agree that EEOC is entitled to argue its case in light of the standards announced in *Betts* and we have considered each of EEOC's arguments in turn.

8. Under the Westinghouse plans, laid-off employees who were eligible to receive severance pay could choose from among three options: 1) lump sum payment, elected within sixty days of layoff; 2) weekly severance payments; and 3) lump sum payment after twelve months. Employees who chose the first option terminated their relationship with Westinghouse and gave up the right to be recalled. App. at 1805–06; 1278–79.

Westinghouse intended the plans to discriminate against older workers with respect to a nonfringe benefit. *See Betts,* 109 S.Ct. at 2868. In this case, we need not determine Westinghouse's intentions because implementation of the severance plans was not coupled with the elimination or reduction of recall rights. *See id.* ("[A]n employer's decision to reduce salaries for all employees while substantially increasing benefits for younger workers might give rise to an inference that the employer was in fact utilizing its benefit plan as a subterfuge for age-based discrimination in wages...."). At all relevant times, recall rights were available to all those on layoff, including older workers. The severance plans did not affect these rights. Only the affirmative action of any employee to terminate the employment relationship—in the case of older employees, by accepting retirement, in the case of older or younger employees, by accepting immediate lump sum severance pay—eliminated the employee's right to be recalled.

Similarly, the severance plans did not affect a laid-off employee's opportunity to transfer to another plant. According to EEOC, the collective bargaining agreements between Westinghouse and the unions provided that open jobs could be filled through transfers in accordance with policies negotiated at the local level. Even if older workers were treated less favorably with respect to transfer rights, as EEOC suggests, we cannot say that implementation of the severance plans brought about this result. The discriminatory impact of the severance plans lies in the total exclusion or limited participation of older workers. After *Betts,* these factors cannot prevent Westinghouse from qualifying for the § 4(f)(2) exemption. Therefore, we hold

that neither the 1979 plan nor the 1982 plan, which permitted retirement-eligible employees to choose between retirement benefits and severance pay with recall rights, constituted a subterfuge to evade ADEA because the plans did not discriminate with respect to a nonfringe-benefit aspect of the employment relationship.[9]

Section 4(f)(2) provides that an employee benefit plan that is not a subterfuge to evade ADEA is exempt, except that "no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual ... because of the age of such individual." 29 U.S.C. § 623(f)(2). Congress added this prohibition to § 4(f)(2) in 1978, Pub.L. No. 95–256, § 2, 92 Stat. 189, in response to a Bureau of Labor Statistics study which revealed that 41% of the workers covered by private pension plans were subject to mandatory retirement provisions. *See* S.Rep. No. 493, 95th Cong., 2d Sess. 9, *reprinted in* 1978 U.S.Code Cong. & Admin.News 504, 512. Congress concluded that raising the upper age limit under ADEA from 65 to 70 "would be an empty gesture if employees remained subject to mandatory retirement because of provisions contained in collective bargaining agreements or employee benefit plans." *Id.*

The Westinghouse plans do not contain mandatory retirement provisions. EEOC contends, however, that the options available under the plans left retirement-eligible employees with no real choice other than retirement, and that this amounted to constructive discharge. Westinghouse claims that the plans permitted older employees to choose between lawful options: under the 1979 plan, retirement or unpaid layoff with recall rights; under the 1982 plan, retire-

---

9. Judge Garth agrees with the court's conclusion that neither the 1979 plan nor the 1982 plan constituted a subterfuge to evade ADEA, and thus, he is in complete accord with the discussion and holding of the court's opinion. However, he would emphasize as well that no violation of the ADEA occurred because Westinghouse afforded an option to every retirement-eligible employee, whereby an employee could choose between participating in Westinghouse's retirement plan or participating in Westinghouse's 1982 severance plan, which included

recall or transfer rights. Hence, Westinghouse did not even indirectly require any older (retirement-eligible) employee to take retirement. An employee could, instead, opt for severance with recall or transfer. Absent that option, in Judge Garth's opinion, the plans in this case might have been challenged. Moreover, Judge Garth stresses that *Public Employees Retirement System of Ohio v. Betts,* —— U.S. ——, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), addresses only *non-fringe* rather than *fringe* benefits, such as Westinghouse's 1982 severance plan.

ment or severance pay with recall rights. Thus, according to Westinghouse, the plans did not permit or require involuntary retirement.

We do not believe that Congress intended § 4(f)(2) to reach circumstances like these where laid-off employees had the option to forego retirement and remain with the company on layoff while awaiting recall.[10] *Cf. Bodnar v. Synpol, Inc.,* 843 F.2d 190, 193 (5th Cir.) (employer's offer of early retirement may create prima facie case of age discrimination if it sufficiently alters status quo that each choice facing employee makes him worse off than he was before offer), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). Rather, we think § 4(f)(2) proscribes the use of employee benefit plans as a means of forcing older workers off the job. *Cf. Henn v. National Geographic Society,* 819 F.2d 824, 826 (7th Cir.) (existence of early retirement plan does not violate ADEA provided an employee on the job may decline offer and continue to work), *cert. denied,* 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). The choice between retirement and unpaid layoff does not constitute involuntary retirement where, as here, continued work was not an option for any of the affected employees, and the employee's layoff status was unrelated to age.[11] *Cf. id.* at 829 (pressure to choose between retirement and continued employment does not make choice involuntary unless terms on which employee would remain on job constitute a violation of ADEA). Nor do we believe that exclusion from the severance plan caused older employees to retire. Those who retired did so because they were laid off.[12] Moreover, after 1982, retire-

ment-eligible employees could choose between retirement benefits and severance pay with recall. We believe that a plan which provides laid-off employees with such a choice cannot be said to require or permit involuntary retirement within the meaning of ADEA.

EEOC suggests that Westinghouse misled older workers about their options and pressured them to choose retirement benefits over severance pay with recall. Although such conduct by Westinghouse, if proven, might constitute a violation of ADEA, it does not demonstrate that the terms of the severance plans required or permitted involuntary retirement.

## IV.

Having concluded that Westinghouse is exempt from liability under § 4(f)(2) of ADEA, we will reverse the judgment entered by the district court against Westinghouse and remand to the district court with the direction that the district court enter judgment in favor of Westinghouse on all EEOC claims. Each side to bear its own costs.

A. LEON HIGGINBOTHAM, JR., Chief Judge, concurring in part and dissenting in part.

I join in Parts I and II of the majority opinion. I also agree, albeit more reluctantly, that *Public Employees Retirement System of Ohio v. Betts,* — U.S. —, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), compels the conclusion that severance plans are "bona fide employee benefit plans." Thus, I join in majority's Part III discussion of that issue. I also join in my colleagues'

---

**10.** According to Westinghouse, the choice between retirement and layoff was a viable one. Westinghouse points out that the charging party in this case, Charles Slackway, opted to remain on unpaid layoff with recall rights rather than retire. We express no opinion on this matter.

**11.** Our decision in *Coventry v. United States Steel Corp.,* 856 F.2d 514 (3d Cir.1988), cited by EEOC, is inapposite. In that case, an employee was required to sign a waiver of his rights under ADEA in order to receive early retirement benefits. We noted that the employee was presented with "little more than a 'Hobson's

choice;'" he could either sign the waiver to receive benefits or face unpaid layoff. *Id.* at 524. The issue was whether and under what circumstances an employee's decision to waive ADEA rights was voluntary, *id.* at 517, not whether exclusion from participation in a severance plan, which left laid-off employees with the choice of retirement or continued layoff, required or permitted involuntary retirement.

**12.** EEOC has not contended, in its amended complaint or in its briefs to this court, that the decision to layoff employees was related to age.

rejection of Westinghouse's argument that the EEOC did not preserve its recall and transfer argument, and in their holding that the plans did not permit or require "involuntary retirement" within the meaning of 29 U.S.C. § 623(f)(2).

However, I must respectfully dissent on one point. Unlike my colleagues, I believe that there are genuine material issues as to whether the plans discriminated against older workers with respect to recall rights—which I believe is a valuable "nonfringe benefit" under *Betts*—and, if so, whether the plans are a subterfuge to evade the purposes of the ADEA. As the majority acknowledges, the options available to retirement-eligible employees under the plans were "less desirable" than the choices available to younger employees, who could maintain recall rights without sacrificing either present layoff income benefits or vested retirement benefits. Thus, compared to their younger colleagues, older workers had a financial disincentive to retain their recall rights. For at least some older workers, this economic disincentive under the plans may have been so great that they felt compelled to take early retirement and forgo their recall rights, rather than forgo present income from their employer.

As I understand the majority's reasoning, the court holds that the fact that the right to recall was *available* to both younger and older workers is sufficient, under *Betts*, to conclude that severance plans do not discriminate against older workers, within the meaning of the ADEA. I do not read the Supreme Court's decision as requiring such a narrow view of discrimination. In *Betts*, the Court stated as an example of a practice giving rise to an inference of subterfuge "an employer's decision to reduce salaries for all employees while substantially increasing benefits for younger employees." 109 S.Ct. at 2868. To me, this language supports the view that to the extent that Westinghouse's severance plans provide economic incentives only to younger employees, the plans may still be actionable under the ADEA.

As the majority notes, a retirement-eligible employee would lose recall rights only through his or her "affirmative action to terminate the employment relationship, through accepting retirement or immediate lump sum severance pay." Maj.Op. at 1362. However, I do not believe that the employees' "affirmative action" in this regard is sufficient to shield their employer from liability under the ADEA. If the older employees' decision to terminate the employment relationship was encouraged by "affirmative," intentional action on the part of the employer in the structuring of its severance plans, then it may be, as the EEOC alleges, that the plans constituted "a subterfuge for ridding Westinghouse's workforce of older workers through the discriminatory denial of recall." EEOC Supp. Brief at 32.

The majority is clearly correct in noting that *Betts* "has significantly altered the ADEA landscape on employee benefit plans." Maj.Op. at 1356. It also cannot be disputed that the litigation challenging Westinghouse's pension and severance plans has consumed too many years and too many dollars. However, in my view, fairness to the parties dictates that the matter be remanded to the district court, which is the proper forum to determine whether—even in the more barren ADEA landscape—the plans actually discriminated on the basis of age and, if so, whether they were a subterfuge for evading the purposes of the ADEA. A remand would give both sides an opportunity to put on evidence, in view of *Betts'* new standards, about the actual effect of the severance plans on the workforce in the affected plants, and Westinghouse's motivations for adopting these plans.