Walter S. KNIGHT, Plaintiff–Appellee,

v.

STATE OF GEORGIA; Georgia Department of Public Safety and Curtis D. Earp, Jr., as the Commissioner of the Georgia Department of Public Safety, Defendants–Appellants.

No. 92–8206.

United States Court of Appeals,
Eleventh Circuit.

June 14, 1993.

**1542**

Susan L. Rutherford, Asst. Atty. Gen., Atlanta, GA, for defendants-appellants.

Karen R. West, Larsen & West, William Washington Larsen, Dublin, GA, for plaintiff-appellee.

Before ANDERSON and DUBINA, Circuit Judges, and CLARK, Senior Circuit Judge.

ANDERSON, Circuit Judge:

■ This case poses the question of whether a Georgia law requiring state police officers to retire at age 55 should be deemed "a subterfuge to evade the purposes of [the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634]." We hold that the law, O.C.G.A. § 47–2–223(c), is not a "subterfuge" within the meaning of ADEA § 4(j)(2), 29 U.S.C. § 623(j)(2), and thus is exempt under § 4(j) from the ADEA's general ban on mandatory retirement rules. We therefore reverse the ruling of the district court denying the State of Georgia's motion for summary judgment and remand this cause with instructions that the motion be granted.

### I. FACTS AND PROCEEDINGS BELOW

Plaintiff-appellee Walter S. Knight was employed by the Georgia Department of Public Safety as a state trooper from July 13, 1970, until July 31, 1988, when at age 55 he was forced to retire pursuant to O.C.G.A. § 47–2–223(c),[1] Georgia's state trooper mandatory retirement law. Challenging the mandatory retirement statute as violating the ADEA, Knight filed an administrative charge with the Equal Employment Opportunity Commission (EEOC) as required by 29 U.S.C. § 626(d). Pursuant to a worksharing agreement, the EEOC referred the charge to

---

1. A [Georgia law enforcement officer] who is subject to this Code section shall be retired on the last day of the month following the month in which he attains 55 years of age. The mandatory retirement age may be waived by the commissioner of public safety as necessary to permit [an officer] who entered service in the Uniform Division on or before December 31, 1965, to complete service sufficient to provide him with 25 years of total creditable service. Such [an officer] shall be retired on the last day of the month following the month in which he completes such service. This Code section shall not apply to the commissioner or the deputy commissioner of public safety. O.C.G.A. § 47–2–223(c).

the Georgia Office of Fair Employment Practices which failed to obtain relief for appellee. Once his right to sue had accrued, appellee initiated this action on July 7, 1989, requesting that the district court declare the mandatory retirement plan illegal and order that he be reinstated and awarded backpay and retroactive benefits. Defendants-appellants, the State of Georgia, the Georgia Department of Public Safety, and Curtis Earp, moved for summary judgment on the ground that ADEA § 4(j), 29 U.S.C. § 623(j), exempts the Georgia state trooper retirement law from the ADEA's otherwise general ban on rules requiring retirement before age 70. On January 27, 1991, the district court denied the motion, finding that the Georgia law constitutes a "subterfuge to evade the purposes of [the ADEA]" and therefore does not qualify for the § 4(j) exemption. The district court subsequently certified its order as one appropriate for interlocutory review by this Court pursuant to 28 U.S.C. § 1292(b), and we agreed to hear the appeal.

## II. DISCUSSION

### A. HISTORY OF THE GEORGIA STATE TROOPER RETIREMENT LAW

The ADEA imposes different restrictions on law enforcement officer mandatory retirement requirements, depending on their nature and the date of their enactment. It is therefore necessary to review the history of the Georgia law in order to evaluate the legality of the provision at issue in this case, O.C.G.A. § 47–2–223(c). The state trooper retirement policy is mandated under the Georgia Employees Retirement System (ERS), O.C.G.A. §§ 47–2–1 through 47–2–334, a comprehensive statute establishing retirement requirements and benefits for state workers. As first enacted by the Georgia legislature in 1949, the ERS permitted state troopers to retire with pension benefits at age 56 and required all covered workers, including troopers, to retire by age 75. 1949 Ga. Laws 138, 146, 162. The 1949 law provided that starting in 1956, the mandatory retirement age for all workers would be lowered to 70. *Id.* In 1970 the provision pertaining specifically to state police officers was amended to require that, as of 1975, all

troopers retire by age 55. However, the 1970 amendment also provided that for troopers who had entered the force prior to December 31, 1960, the Director of the Department of Public Safety was vested with the discretion to waive the mandatory retirement rule in order to permit such troopers to complete 25 years of creditable service and thereby qualify for superior retirement benefits. 1970 Ga. Laws 26, 29–30. Finally, in 1978 the law was amended again, expanding the class of troopers for whom mandatory retirement might be waived to include all those who entered the force prior to December 31, 1965. 1978 Ga. Laws 1440, 1441.

### B. HISTORY OF THE ADEA PROVISIONS RELATING TO MANDATORY RETIREMENT POLICIES

As first enacted in 1967, the ADEA contained no provision specifically forbidding age-based mandatory retirement rules. Although such requirements could be challenged as violating the statute's general ban on age discrimination against persons under age 65, ADEA, Pub.L. No. 90–202, §§ 4(a)(1), 12, 81 Stat. 602, 603, 608, 29 U.S.C. §§ 623(a)(1), 631 (1968), most mandatory retirement programs were found to fall within a statutory exception to the ADEA that permitted age-discriminatory policies instituted under "bona fide seniority system[s] or [ ] bona fide employee benefit plan[s]" so long as such systems or plans were not "subterfuge[s] to evade the purposes of the [ADEA]." ADEA § 4(f)(2), 29 U.S.C. § 623(f)(2) (1968). *See United Air Lines v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977); *Brennan v. Taft Broadcasting Co.*, 500 F.2d 212 (5th Cir.1974).[2] *See also* 29 C.F.R. § 1625.9(a)(1) (1992) (summarizing history of ADEA mandatory retirement provisions). The original 1967 statute excluded from coverage employees of state and local governments, ADEA § 11(b), 29 U.S.C. § 630(b) (1968), but that exception was removed by a 1974 amendment. Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, § 28(a)(2), 88 Stat. 55, 78, amending ADEA § 11(b), 29 U.S.C. § 630(b) (1976).

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

In 1978 the statute was amended so as specifically to forbid mandatory retirement before the age of 70. This new blanket prohibition covered even retirement requirements instituted pursuant to bona fide seniority systems or employee benefit plans. 1978 ADEA Amendments, Pub.L. No. 95–256, §§ 2(a), 3(a), 92 Stat. 189, 189, amending ADEA §§ 4(f)(2), 12(a), 29 U.S.C. §§ 623(f)(2), 631(a) (1982).

In 1983 the Supreme Court in *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), rejected a constitutional challenge to Congress's 1974 extension of ADEA protections to state and local public employees. The Court held that even under the then-prevailing Tenth Amendment jurisprudence of *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the ADEA could still permissibly be applied to state law enforcement officers. In the wake of the *Wyoming* decision, the EEOC initiated an enforcement effort targeting public employee mandatory retirement laws—rules which in spite of the 1978 ADEA amendments were still common, particularly for firefighters and law enforcement officers. Reacting to this wave of legal challenges, state and local governments in 1986 prevailed on Congress to grant them a grace period during which to study the question of whether physical and mental fitness tests might safely be substituted for across-the-board mandatory retirement rules. This grace period was established under the 1986 ADEA Amendments which contain a provision specially exempting firefighters and law enforcement officers for a period of seven years from the ADEA's ban on forced retirement. This temporary exemption, which will expire pursuant to a sunset clause on December 31, 1993, 1986 ADEA Amendments, Pub.L. No. 99–592, § 3(b), 100 Stat. 3342, 3342, codified at 29 U.S.C. § 623 note (1988), provides that:

> It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or a political subdivision of a State,

or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken—

> (1) with respect to the employment of an individual as a firefighter or as a law enforcement officer and the individual has attained the age of hiring or retirement in effect under applicable State or local law on March 3, 1983, and

> (2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this Act.

1986 ADEA Amendments, § 3(a), 100 Stat. at 3342, codified as ADEA § 4(i), 29 U.S.C. § 623(i) (1988), recodified as ADEA § 4(j), 29 U.S.C.A. § 623(j) (West Supp.1992).[3]

## C. LEGALITY OF THE GEORGIA STATE TROOPER RETIREMENT LAW UNDER THE 1986 ADEA FIREFIGHTER/LAW ENFORCEMENT OFFICER EXEMPTION

In order to qualify for the § 4(j) exemption, a firefighter or law enforcement officer mandatory retirement law must satisfy two requirements. First, it must be no more restrictive than the retirement rule that the employer had in place on March 3, 1983. ADEA § 4(j)(1), 29 U.S.C. § 623(j)(1); *Roche v. City of Chicago*, No. 89–C–6956, 1991 WL 104134, at *2 (N.D.Ill. June 12, 1991). There is no dispute that the Georgia state trooper retirement law meets this requirement as it has not been altered since 1978. Second, the mandatory retirement law must be part of "a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of [the ADEA]." ADEA § 4(j)(2), 29 U.S.C. § 623(j)(2). The district court, at the urging of appellee, found that the Georgia law is, in fact, a subterfuge to evade the purposes of the ADEA and therefore is not shielded by the § 4(j) firefighter/law enforcement officer exception to the ADEA ban on mandatory retirement rules. For the reasons set forth below, we disagree with this conclusion.

---

**3.** At the same time that it carved out the firefighter and law enforcement officer exception to the ADEA's limitation on age-based forced retirement, Congress in the 1986 amendments other-

wise expanded the scope of the statute's ban on such policies. *See* 1986 ADEA Amendments § 2(c), 100 Stat. at 3342, amending 29 U.S.C. § 631 (1988).

### 1. DEFINITION OF "SUBTERFUGE" UNDER ADEA § 4(j)(2)

■ To date there is only a single reported case in which a federal court has ruled on whether a challenged mandatory retirement rule should be deemed a subterfuge under § 4(j)(2). *See McCann v. City of Chicago,* No. 89–C–2879, 1990 WL 70415 (N.D.Ill. May 3, 1990); *McCann v. City of Chicago,* Nos. 89–C–2879, 90–C–0464, 1991 WL 2537 (N.D.Ill. Jan. 8, 1991). However, there exists a substantial body of case law interpreting similar language that, until 1990, appeared in another provision of the ADEA, § 4(f)(2), 29 U.S.C. § 623(f)(2) (1988). As noted in appellee's supplemental brief, the subterfuge language of § 4(j) was borrowed nearly verbatim from the former § 4(f). Where such a relationship exists between statutory provisions, courts construe the language found in the derivative provision in the same fashion as the original language. *Trans World Airlines v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985). We therefore find it appropriate to draw upon the pre–1990 § 4(f) case law in interpreting § 4(j).

Like the § 4(j) firefighter/law enforcement officer exception, § 4(f) exempts certain practices from the ADEA's general ban on age discrimination. Until it was modified in 1990, § 4(f) provided, in pertinent part, that:

> It shall not be unlawful for an employer, employment agency, or labor organization
>
> * * *
>
> (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, *which is not a subterfuge to evade the purposes of [the ADEA]* . . . .

29 U.S.C. § 623(f)(2) (1988) (emphasis added). During the years when this provision was in effect, the courts established guidelines for determining whether a challenged benefit, pension, insurance, or retirement plan should be declared a "subterfuge" for the purposes of § 4(f)(2). Among these guidelines were several per se rules holding that certain types of plans can never consti-

tute subterfuges. First, bona fide seniority systems or retirement plans that pre-dated the enactment of the ADEA could not be challenged as subterfuges under § 4(f)(2). *Public Employees Retirement System v. Betts,* 492 U.S. 158, 168, 109 S.Ct. 2854, 2861, 106 L.Ed.2d 134 (1989); *United Air Lines v. McMann,* 434 U.S. 192, 203–04, 98 S.Ct. 444, 450–51, 54 L.Ed.2d 402 (1977). Second, where post-ADEA modifications to pre-ADEA plans did not increase the age-based disparities contained in the preexisting plans, then they too were deemed shielded from challenge as subterfuges, even when they preserved age-discriminatory features of the older plans. *Betts,* 492 U.S. at 169, 109 S.Ct. at 2862; *EEOC v. Westinghouse Elec. Corp.,* 907 F.2d 1354, 1359 (3rd Cir.1990). *See also EEOC v. County of Orange,* 837 F.2d 420, 423 (9th Cir.1988); *EEOC v. Cargill, Inc.,* 855 F.2d 682, 686 n. 4 (10th Cir.1988). Third, even where post-ADEA plan modifications increased or created age-based disparities, such modifications could be held to be subterfuges to evade the purposes of the ADEA only where the age-based discrimination pertained to or affected non-fringe benefits of employment such as actual hiring, firing, wages, or salaries. Post–ADEA plan modifications that discriminated against older workers only with respect to fringe benefits were held not to render plans subterfuges. *Betts,* 492 U.S. at 177–78, 109 S.Ct. at 2866.

■ This case law construing the language "subterfuge to evade [the ADEA]" is no longer applicable under § 4(f)(2). In 1990 in the Older Workers Benefit Protection Act (OWBPA), Congress excised the term "subterfuge" from § 4(f)(2). OWBPA, Pub.L. No. 101–433, § 103, 104 Stat. 978, 978–89 (1990), codified at 29 U.S.C.A. §§ 623(f)– 623(*l*) (West Supp.1992). Aimed at overturning the construction given to § 4(f)(2) by the Supreme Court in *Betts,* the OWBPA amendments sharply narrowed the scope of the ADEA exception created under that provision.[4] Although the pre-OWBPA precedents construing the phrase "subterfuge to evade [the ADEA]" no longer govern § 4(f), we nonetheless hold that that body of law should properly be consulted to give meaning to the

---

4. Under the OWBPA, employee benefit plans that discriminate on the basis of age with respect to fringe benefits are permitted only if they satisfy

certain enumerated criteria. *See* ADEA §§ 4(f)(2)(B), 4(*l*), 29 U.S.C.A. §§ 623(f)(2)(B), 623(*l*) (West Supp.1992).

term "subterfuge" as it appears in § 4(j). In so ruling, we are in accord with the only other federal court that has addressed this question. *See McCann v. City of Chicago*, No. 89–C–2879, 1990 WL 70415, at *3–*5 (N.D.Ill. May 3, 1990).

Appellee argues that by statutorily overruling the *Betts* Court's construction of § 4(f), the OWBPA Congress expressed general disapproval of the *Betts* definition of "subterfuge." On this basis appellee contends that it is inappropriate to apply the *Betts* standard under § 4(j). We disagree.[5] This position might have merit if Congress had effected its overruling of *Betts* by writing into § 4(f) a revised definition of "subterfuge." In such a circumstance, one might infer that the revised definition was intended to be applied everywhere that the term appeared in the ADEA. However, the OWBPA Congress overruled *Betts*, not by statutorily redefining "subterfuge," but instead by removing the term altogether from § 4(f). We infer from this choice of methods—that is, from the fact that Congress removed the subterfuge language from § 4(f) while leaving it unaltered in § 4(j)—that the OWBPA was meant to modify only § 4(f). Had Congress also intended to redefine the term subterfuge as it appears in § 4(j), we believe that it would have done so expressly.

We draw further support for this conclusion from the fact that the standard written into § 4(f) by the OWBPA as a substitute for the deleted subterfuge language is one that has no sensible application in the context of a safety officer mandatory retirement rule. Under the OWBPA amendments, employee benefit plans that discriminate on the basis of age are, subject to certain exceptions, permitted only where the reduced benefits received by older workers can be shown to result from corresponding age-based differentials in the cost of providing the benefits. *See* OWBPA §§ 101, 103, 104 Stat. at 978–79, codified at 29 U.S.C.A. §§ 621 note,

623(f)(2)(B) (West Supp.1992). It is difficult to understand how this cost-benefit standard could be applied under § 4(j) since mandatory retirement policies do not involve benefits and, in the case of firefighters and law enforcement officers, are understood to be motivated by concerns of safety, not cost. The fact that the cost-benefit standard could not sensibly be applied under § 4(f) bolsters our conclusion that Congress did not intend it to be.

Moreover, even if one could come up with a sensible way to apply the OWBPA cost-benefit standard under § 4(j), there exists an additional ground for concluding that Congress did not intend such an application. If safety officer mandatory retirement policies were shielded by § 4(j) from the ADEA ban only when the employer could show some sort of cost-based justification, then many such policies would presumably be deemed illegal. Indeed, such is precisely the result urged by appellee in this case. Since it was the very purpose of § 4(j) temporarily to exempt such rules from the ADEA ban, reading the OWBPA cost-benefit standard into § 4(j) would amount to holding that the OWBPA had repealed, or at least narrowed, the 1986 exemption *sub silentio*. The canon of statutory construction strongly disfavors findings of implied repeal, *Rodriguez v. United States*, 480 U.S. 522, 524, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987); *Randall v. Loftsgaarden*, 478 U.S. 647, 661, 106 S.Ct. 3143, 3152, 92 L.Ed.2d 525 (1986); 1A C. Sands, *Sutherland on Statutory Construction* § 23.10 (4th ed., 1985 rev.), and we decline to draw such an inference in this case.

### 2. EVALUATION OF THE GEORGIA STATE TROOPER RETIREMENT LAW UNDER THE *BETTS* DEFINITION OF "SUBTERFUGE"

Applying the pre-OWBPA *Betts* definition of "subterfuge," we find that the Geor-

---

5. In this opinion we reach the merits of the OWBPA issue, holding that the 1990 amendments did not alter the meaning of the term "subterfuge" as it appears in § 4(j). In doing so we assume arguendo, but expressly do not decide, that the OWBPA might apply retroactively to an employment action predating the statute's enactment, such as the 1988 forced retirement at issue in this case. While we are inclined to

believe that the OWBPA amendments do not apply to claims arising from actions predating the statute's enactment, *see* OWBPA § 105, 104 Stat. at 981, codified at 29 U.S.C.A. § 623 note (West Supp.1992), we expressly decline to resolve this question in this case because the issue was poorly briefed by the parties and because, on the merits, it appears clear that the OWBPA amendments do not affect § 4(j).

gia state trooper retirement law cannot be deemed "a subterfuge to evade the purposes of [the ADEA]" under ADEA § 4(j)(2). As recounted above, the Georgia law's retirement age of 55 was established in 1970. Although the ADEA was enacted in 1967, the statute was not extended to cover the employees of state and local governments until 1974. Fair Labor Standards Amendments of 1974, § 28(a)(2), 88 Stat. at 78, amending ADEA § 11(b), 29 U.S.C. § 630(b) (1976). Because retirement plans that were adopted before an employer was subject to the ADEA are held per se not to be subterfuges, *Betts*, 492 U.S. at 168, 109 S.Ct. at 2861; *United Air Lines*, 434 U.S. at 203–04, 98 S.Ct. at 450–51, the age 55 retirement requirement is immune from challenge on that ground.

The only modification of the Georgia law that post-dates the 1974 extension of the ADEA to the states is the 1978 amendment expanding the class of troopers for whom the Director of the Department of Public Safety has discretion to waive the mandatory retirement rule.. However, a post-ADEA modification to a pre-ADEA plan that does not increase the age-based disparities contained in the preexisting plan is also shielded from being challenged as a subterfuge. *Betts*, 492 U.S. at 169, 109 S.Ct. at 2862; *Westinghouse Elec. Corp.*, 907 F.2d at 1359. The 1978 amendment to the Georgia law did not make any more severe the provisions of the mandatory retirement law or expand the class of troopers who are subject to it. To the contrary, by broadening the category of troopers eligible for discretionary waiver of the requirement, the 1978 amendment actually increased the opportunities for mitigating the age-discriminatory effects of the law for some workers. Such a change cannot render the Georgia law a subterfuge to evade the ADEA.[6]

## D. APPELLEE'S OTHER ARGUMENTS

 Appellee urges that there exist two separate alternative grounds on which the district court's denial of appellants' motion for summary judgment can be affirmed. Neither has merit. First, appellee notes that the state has not shown that being less than 55 years of age is a bona fide occupational qualification (BFOQ) for serving as a Georgia state trooper. Appellee argues that the state therefore cannot avail itself of the exemption from ADEA liability created under ADEA § 4(f)(1), 29 U.S.C. § 623(f)(1). Although this observation is correct, it poses no obstacle to a grant of summary judgment since the state has availed itself, not of the § 4(f)(1) exception, but of the § 4(j) firefighter/law enforcement officer exemption for which there is no requirement that the employer establish that age is a BFOQ.

 Second, appellee contends that little is known about the size and average age of the group of troopers who were made eligible for discretionary waiver of the retirement rule by the 1978 amendment to the Georgia law. He argues that this uncertainty gives rise to a genuine issue of material fact and so precludes a grant of summary judgment for appellants. However, only one factual issue pertaining to the 1978 amendment is material to the question of whether the § 4(j) exemption obtains: whether the amendment exacerbated or mitigated the age-discriminatory features of the state trooper retirement law then in place. Because expansion of the pool of troopers eligible for discretionary waiver of the retirement rule can only have mitigated the discriminatory effects of the policy, there exists as to this material fact no genuine issue that would preclude summary judgment. The alleged factual uncertainties noted by appellee are not material and so pose no obstacle to a grant of summary judgment for appellants.

---

6. The district court found that the 1978 amendment to the state trooper retirement law, by expanding the class of officers for whom the retirement rule might be waived, amounts to an "implied acknowledgement that the mandatory retirement [rule] lacks any appreciable foundation." District Court Order at 10. The court concluded that the 1978 amendment "demonstrates the wholly arbitrary nature of the mandatory retirement age and thereby exposes the chal-

lenged practice as a [subterfuge]." *Id.* at 11–12. Although this reasoning is not without intuitive appeal, it does not comport with the *Betts* definition of "subterfuge." The district court in essence found that partial repeal of a policy embodying an age-based disparity exposes the unaltered portion of the policy as a subterfuge for discrimination. *Betts*, however, holds precisely the contrary: that modifications that reduce policies' age-based disparities cannot be subterfuges.

**1548**

### III. CONCLUSION

Having found that there exists no genuine issue as to the relevant facts and that, on those facts, the Georgia state trooper retirement law, O.C.G.A. § 47–2–223(c), does not constitute "a subterfuge to evade the purposes of [the ADEA]" under ADEA § 4(j)(2), 29 U.S.C. § 623(j)(2), we conclude that appellee's forced retirement pursuant to the Georgia law on July 31, 1988, did not violate the ADEA. The judgment of the district court denying appellants' motion for summary judgment is therefore REVERSED and this cause is REMANDED to the district court with instructions that appellants' motion for summary judgment be granted.

REVERSED and REMANDED with instructions.