EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

NEW YORK STATE; New York State Department of Parks, Recreation & Historic Preservation; and New York State Department of Civil Service, Defendants.

No. 92 Civ. 2789 (PNL).

United States District Court,
S.D. New York.

March 23, 1994.

---

4. As this action is remanded, the Court lacks jurisdiction to consider the Bank's request for dismissal and sanctions.

Equal Employment Opportunity Com'n, New York City, for plaintiff (James L. Lee, Regional Atty., Anna M. Stathis, Supervisory Trial Atty. and Michael J. O'Brien, Trial Atty., of counsel).

Oliver Koppel, Atty. Gen. of the State of N.Y., New York City, for defendants (Charles F. Sanders, Asst. Atty. Gen., of counsel).

## OPINION AND ORDER

LEVAL, Circuit Judge.*

The Equal Employment Opportunity Commission ("EEOC") brings this action under the Age Discrimination in Employment Act ("ADEA") to enjoin employment practices that discriminate against persons above the age of 40. Pursuant to a recent change in New York law, the New York Office of Parks, Recreation & Historic Preservation ("State Parks") excludes from consideration applicants for employment as "park patrol officers" who are older than 29. The EEOC sues to enjoin this policy, and for other relief. Trial on the issue of liability has been submitted on a written record.

### Background

New York Civil Service Law § 58(1)(a) requires that applicants for "police officer" positions, as defined in N.Y.Civ.Serv.Law § 58(3), be between 21 and 29 years of age, notwithstanding up to six years of military service. On July 10, 1990, New York amended the definition of "police officer" found in § 58(3) to include the position of regional state park police ("park patrol officers.") 1990 N.Y.Laws Ch. 375. This legislative change, effective as of August 9, 1990, made the age requirements of § 58(1) applicable to the position of park patrol officer for the first time.

The amended law was applied neither to existing park patrol officers nor to candidates who had already received appointments from the lists of eligible candidates created subsequent to a written examination administered on December 10, 1988.[1] During 1989, appointments were made from these lists irrespective of the ages of the candidates, and the defendants concede that some candidates over 40 years old were hired.

---

* Sitting by designation.

1. The New York Department of Civil Service ("Civil Service,") in conjunction with the relevant state agency, develops examinations and examination announcements, administers examinations, and establishes lists of certified candidates who have passed an examination for a civil service title.

Four eligibility lists are created subsequent to each administered park officer exam. (Separate "Park Patrol Officer," and "Park Patrol Officer, Spanish Speaking" lists are created from outside applicants and from applicants who are current permanent employees of the Department of Parks, Recreation and Historic Preservation.) After the lists are created by Civil Service, they are "decentralized." Decentralization consists of sending the names of the candidates and their scores to State Parks. State Parks is then responsible for interviewing, selecting, and hiring candidates from the lists provided to them. Candidates then take oral tests administered by State Parks, interview with the regional commanding officer, and must undergo physical examinations (including drug tests), and police background investigations, and satisfy other eligibility prerequisites determined by State Parks.

On September 7, 1990, Civil Service wrote to the candidates on the eligible lists created from the December 1988 exam, informing them that as of August 9, 1990, park patrol officers come under Section 58 of the Civil Service law. The letter asked the applicants to submit additional information to facilitate the determination of whether they met the "newly imposed age requirements." [2] After collecting the forms completed by the eligible candidates, Civil Service provided the information to State Parks. On December 11, 1990, Civil Service advised State Parks that it was decentralizing the eligibility lists,[3] and that State Parks would be "solely responsible for enforcing the mandates of Chapter 375 of the Laws of 1990." Candidates who did not respond to the letter or did not meet the new age requirements were not considered for employment by State Parks, and State Parks so informed these candidates by letter. Since August 1990, State Parks has hired only candidates who meet the age requirements of § 58,[4] although the written examinations administered by Civil Service are still open to candidates of all ages.[5]

## Discussion

The Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA), prohibits various forms of age discrimination in employment against persons above 40 years of age. In *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), the Supreme Court held that the ADEA applied to state and local governments. Recognizing hardships that this decision visited on state and local governments, Congress amended the ADEA in 1986. The relevant provision, 29 U.S.C. § 623(j) [6], excepted certain age-based programs that were in place on March 3, 1983 (the day after *Wyoming* was decided).[7]

The EEOC argues that, as it is conceded no age limitations were in place for park patrol officers in March 1983, New York's 1990 legislative changes do not fall within the exception to the ADEA. New York's position is that, as park patrol officers have long been classified as law enforcement personnel, and the age restrictions in Section 58 were in place in 1983 for most law enforcement personnel, § 623(j) permits the subsequent application of these restrictions to park patrol officers. It contends, where the restriction existed prior to March 3, 1983, Section 623(j) allows reasonable broadening of the specific categories of employees included within the restriction.

*Roche v. Chicago*, 818 F.Supp. 233 (N.D.Ill. 1993), is squarely on point. In 1983, the Chicago Fire Department's mandatory re-

---

**2.** *See* Hite Aff.Ex. "F."

**3.** In deposition, however, Dixon Southworth of Civil Service stated that the lists had been decentralized from the time of their establishment, around March 30, 1989. According to Southworth, the December 11, 1990 letter merely stated that the enforcement of the new statutory provision was also to be decentralized. The deposition of Patricia Boland, Personnel Director of State Parks, confirms that the lists were decentralized around April 1, 1989. (Boland Dep. pp. 11–12.)

**4.** A subsequent examination was administered on July 18, 1992, from which four lists were created and 71 officers were appointed. An examination was also administered on December 5, 1992. No appointments have yet been made from the four created lists.

**5.** Although persons of all ages may still sit for the examination, the examination announcements issued by Civil Service now state that persons must be between 20 and 29 years of age to be appointed as park officers.

**6.** 1990 congressional amendments to the ADEA redesignated this section—originally enacted as 623(i)—as 623(j). The current section designation, 623(j), is used throughout this opinion.

**7.** The statute provides that:

It shall not be unlawful for an employer which is a State, a political subdivision of a State [or] an agency or instrumentality of a State ... to fail or refuse to hire ... any individual because of such individual's age if such action is taken—

(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer and the individual has attained the age of hiring or retirement in effect under applicable state or local law on March 3, 1983, and

(2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

29 U.S.C. § 623(j). This exception was to remain in effect until December 31, 1993. *See* 1986 ADEA Amendments, P.L. 99–592 § 3(b).

tirement provisions applied only to employees in the classified civil service. In 1988, the city amended the ordinance to apply to "all members of the uniformed service"—a broader class of firefighters than was within the ambit of the original ordinance. The plaintiffs, non-civil service deputy commissioners, were mandatorily retired at age 63 pursuant to the 1988 change. The city contended that under § 623(j) it was permitted to broaden the class of firefighters to whom the ordinance applied, arguing that § 623(j) requires only that the retirement ordinance provide the same retirement *age* that was in effect in 1983. Although the court admitted that the statute was somewhat ambiguous, it flatly rejected the city's position. The court held that in enacting § 623(j), Congress sought to ensure that "no lesser protection against discrimination would be provided for workers than was in effect at the time of the *Wyoming* decision.... Therefore, the City cannot expand the class of persons to whom the 1983 ordinance applies...." *Id.* at 236. The court's holding is directly on point: "Since the 1983 ordinance did not include within its scope Deputy Fire Commissioners and the City may not expand the scope of the coverage beyond what existed in 1983, the 1988 mandatory retirement ordinance violates section 4(j) of the ADEA." *Id.* at 238.[8]

In *Gately v. Massachusetts*, 2 F.3d 1221 (1st Cir.1993), the First Circuit was confronted with a similar situation. In 1991, the Massachusetts legislature consolidated the Division of State Police, which mandated retirement at 50, with three smaller police forces, which had mandated retirement at 65. Massachusetts repealed all of the previously governing retirement provisions and replaced them with a blanket retirement age of 55 for the new consolidated forces. *Id.* at 1229. The district judge had granted a preliminary injunction to members of the smaller consolidated services who were soon to be forced to retire at 55. The First Circuit upheld the injunction, ruling that age limitations may only be enforced if they were applicable to the individuals in question in 1983.[9] As the court noted:

> To be sure, the phraseology [of 623(j)] is not a model of clarity. Yet in their effort to read a loophole into § 623(j), defendants ignore the word "individual" which appears four times in the statute. When read as a whole, we believe that the language compels the conclusion that the word "applicable" means "applicable to the individual."

*Id.*

Other courts have interpreted § 623(j) in similar fashion, holding that it exempts only those specific programs or requirements that were in place in 1983. In *Knight v. Georgia*, 992 F.2d 1541 (11th Cir.1993), for example, the court of appeals considered the legality of a mandatory retirement provision for Georgia state troopers. It held that "In order to qualify for the § 4(j) exemption, a firefighter or law enforcement mandatory retirement law.... *must be no more restrictive than the retirement rule that the employer had in place on March 3, 1983*." *Id.* at 1544 (emphasis added).[10] Similarly, in *McCann v. Chicago*, No. 89 C 2879, 1990 WL 70415 (N.D.Ill. May 3, 1990), *aff'd* 968 F.2d 635 (7th Cir.1992), the court noted that the purpose of § 623(j) was to provide states with a grace period from the ADEA requirements while

---

8. A review of legislative history supports the result reached in *Roche*. Senator Ford pointed out that "The purpose of this provision is to provide relief to those jurisdictions that were forced to respond to the Wyoming case while at the same time ensuring that no lesser discrimination protection will be provided for workers than what was in effect at the time the Wyoming case was decided." 132 Cong.Rec. 32,659 (1986). The house debates reveal a similar ethos: "We have provided 7-year transition periods to allow ... police and firefighters to adjust to the requirements of the new law.... We are confident that these institutions will ultimately benefit from the requirement that they begin basing hiring and retirement decisions on an individual's qualifica-

tions and job performance." 132 Cong.Rec. 32,-792 (1986) (statement of Rep. Hawkins).

9. As the circuit court pointed out, "[i]n effect, therefore, defendants contend that § 623(j) allows them to take a group of officers who in 1983, were subject to retirement at 65, give them a new title in 1992, and, in doing so, subtract 10 years from their retirement age. The plain meaning of the statutory language simply does not support this result." *Id.* at 1229.

10. The court granted summary judgment to the defendants, holding that it was permissible to implement the retirement scheme that was in place in 1983.

**310**

ensuring that protections did not fall below those in place the day after the *Wyoming* decision in 1983. The court held that under § 623(j), "we must ascertain whether the plan under which the City mandatorily retired plaintiffs provided them *with the same or greater protections than the plan in effect on March 3, 1983." Id.* at \*4 (emphasis added).

The courts that have considered § 623(j) have uniformly held that the ADEA requires that police and fire workers be offered no less protection that they were afforded by state and local governments in 1983. Although the *Knight* and *McCann* courts did not reach the specific issue of whether new categories of law enforcement personnel could be added pursuant to the § 623(j) exemption, their limiting interpretation of the statute—that the ADEA requires that statutes be "no more restrictive" than they were in 1983—comports with the EEOC's position that if park patrol officers were not subject to age requirements in 1983, they could not be subjected to them thereafter.

I agree with the analysis of the authorities cited above. Applying it to this case makes clear that, because no age restrictions were applicable to individuals who applied to be park patrol officers in 1983, it was impermissible for New York to reclassify the position in 1990 and subject applicants to age restrictions for the first time.[11]

Finally, although the ADEA provides for a bona fide occupational qualification (BFOQ) defense, I do not reach the BFOQ issue because New York did not raise it as a defense in its answer, in its memorandum of law, or in its reply memorandum of law.

*Conclusion*

The court finds the plaintiffs have established liability in that the application of the

---

11. I find unpersuasive the defendant's argument that the 1990 amendment was "remedial" or "retroactive" and should therefore be given special deference. By its own terms, the law on its face is clearly not retroactive, as it took effect 30 days after passage. The line of cases cited by the defendants is therefore clearly inapposite. Additionally, there are still many classes of state employees classified as "law enforcement officers" under N.Y.Crim.Proc.L. § 1.20(34) who are not "police officers" under N.Y.Civ.Serv.L. § 58.

age requirements of N.Y.Civ.Serv.Law § 58(1)(a) to the position of regional state park patrol officer violates the federal Age Discrimination in Employment Act, and does not come within the exception created by 29 U.S.C. § 623(j).

SO ORDERED.

This significantly undermines defendant's claim that this amendment was intended to "cure" an anomalous inconsistency in New York law. Additionally, the defendant has presented no evidence in support of his claim that the intent of the legislature was remedial, curative, or retroactive. Finally, under New York law, statutory enactments are prospective unless there is a clear intent otherwise. *See, e.g., Thomas v. Bethlehem Steel Corp.,* 63 N.Y.2d 150, 481 N.Y.S.2d 33, 35–36, 470 N.E.2d 831 (1984).