**Thomas ROCHE, William Foley and Joseph Brichetto, Plaintiffs–Appellees,**

v.

**CITY OF CHICAGO, Defendant–Appellant.**

No. 93–2737.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1994.

Decided May 6, 1994.

Mary Stowell, Linda Friedman (argued), Leng, Stowell, Friedman & Vernon, Chicago, IL, for plaintiff-appellee.

Lawrence Rosenthal, Deputy County Counsel, Benna R. Solomon, Julian Henriques (argued), Susan S. Sher, Office of the Corp. Counsel, Appeals Div., Chicago, IL, for defendant-appellant.

Gwendolyn Young Reams, E.E.O.C., Washington, DC, James R. Neely, Jr., E.E.O.C., St. Louis, MO, Carolyn L. Wheeler, Dori K. Bernstein (argued), E.E.O.C., Office of Gen. Counsel, Washington, DC, for amicus curiae.

Before BAUER, FLAUM and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Appellees were Deputy Fire Commissioners for the City of Chicago. They were mandatorily retired by the City under an amended retirement ordinance passed in March 1988 that set the maximum age for uniformed service in the fire department at sixty-three years. After an administrative charge was adequately pursued with the Equal Employment Opportunity Commission (EEOC), appellees brought suit against the City under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (ADEA), which generally protects employees over the age of forty from age-based employment decisions. The City and appellees filed cross motions for summary judgment, the former claiming that its actions fell within an ADEA provision that excludes some forced retirement of firefighters from the statute's coverage, the latter arguing that the exemption was inapplicable. The district court agreed with the appellees and granted summary judgment in their favor. *See Roche v. City of Chicago,* 818 F.Supp. 233 (N.D.Ill. 1993). After reviewing the matter *de novo, see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), we affirm.

■ The ADEA, originally enacted in 1967, was amended in 1974 to include state and local governments within the definition of "employer," thereby subjecting municipalities like Chicago to its strictures. *See* 29 U.S.C. § 630(b). In 1983, the Supreme Court upheld the constitutionality of this extension of federal regulation in *E.E.O.C. v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), and soon thereafter the EEOC embarked upon an enforcement effort targeting public employee mandatory retirement laws. In response to a spirited reaction from state and local governments, Congress, in 1986, enacted a grace period in which the hiring and retiring of firefighters and law-enforcement officers would be exempted from ADEA coverage if carried out in accordance with applicable state or local age restrictions on the books when the *Wyoming* decision was handed down.[1] *See Knight v. Georgia,* 992 F.2d 1541, 1544 (11th Cir.1993). The exemption, originally codified as 29 U.S.C. § 623(i) and subsequently recodified as 29 U.S.C. § 623(j), reads in relevant part:

It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or a political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken—

(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer and the individual has attained the age of hiring or retirement in effect under applicable State or local law on March 3, 1983....

It is undisputed that Chicago Deputy Fire Commissioners are "firefighters" within the meaning of the exemption and this dispute has therefore centered on whether the appellees had "attained the age of ... retirement in effect under applicable ... local law on March 3, 1983" when they were involuntarily retired in 1988 and 1989.

On March 3, 1983, Chicago Municipal Code § 25–37 read:

---

1. Because Congress has not provided otherwise, the grace period expired on December 31, 1993.

*See* 29 U.S.C. § 623(j).

*Retirement age for policemen and firemen.* The age of sixty-three years shall be the maximum age for legal employment of policemen and firemen in the classified career service of the city. Every policeman and every fireman in the classified career service of the city who has attained the age of sixty-three years shall forthwith and immediately be retired from service.[2]

In the wake of *Wyoming,* Chicago amended the ordinance to raise the retirement age for "members of the uniformed service of the Fire Department in the classified career service of the City" to seventy. *See* Chicago Mun.Code § 25–37 (1984). (Until 1986 the ADEA did not cover individuals over seventy). In 1988, after Congress had enacted the § 623(j) exemption, Chicago amended the ordinance again, lowering the retirement age for "every member of the uniformed service of the fire department" back to sixty-three. *See* Chicago Mun.Code § 26–37 (1988) (recodified as § 2–152–410 (1990)). Appellees Foley and Roche, having already turned sixty-three, were retired upon passage of the 1988 amended ordinance. Appellee Brichetto was immediately retired when he turned sixty-three the following year.

Deputy Fire Commissioners are unquestionably members of the "uniformed service of the Fire Department" under the 1988 amended ordinance, *see* Chicago Mun.Code § 2–36–020, and thus the forced retirement of appellees was carried out in accordance with municipal law. But was existing municipal law, and the actions taken thereunder, in accordance with federal law, which required that age-based mandatory retirement be measured against 1983 standards? That is, under the ordinance effective on March 3, 1983, did appellees qualify as "firemen in the classified career service," who could be mandatorily retired at age sixty-three? The City asserts that appellees were covered by this ordinance and therefore their forced retirement on the basis of having reached the age of sixty-three was legal. Appellees argue, and the district court concluded, that the 1983 ordinance did not extend to Deputy Fire Commissioners and therefore their age-based mandatory retirement is not saved from the ADEA's general prohibition against age-conscious employment decisions.

The City does not contest that according to Rule III of its Personnel Rules Deputy Fire Commissioner is considered to be a "Position[ ] Exempt from the Career Service." The Rule is consistent with Chicago Municipal Code § 2–74–030(7) & (13) which establishes that "firefighters above the rank of battalion chief" (which Deputy Fire Commissioners are) are not "Career service employees." As the language is clear, one would think this case is simple: Deputy Fire Commissioners are not career service employees; they are not covered by the 1983 ordinance which allows the City to retire career service employees at sixty-three; because the City does not point to any other 1983 law that authorizes the involuntary retirement of sixty-three year-old Deputy Fire Commissioners,[3] the § 623(j) exemption is not a safe harbor for the forced retirement of appellees.

■ The City, determined not to capitulate so easily, offers a (unpersuasive) rejoin-

---

**2.** The printed ordinance actually reads "classified civil service" instead of "classified career service" as set out above. In 1977 Chicago converted from a "civil service" system under state law to a "career service" system under municipal ordinance and passed a separate ordinance substituting "career service" for "civil service" wherever appearing in the city code. *See* Chicago Mun.Code § 25.1–11 (1978). Accordingly, our references to the retirement ordinance will incorporate the substitution.

**3.** Actually, the City does cursorily argue that a municipal code provision vesting in the Fire Commissioner "the management and control of all matters pertaining to the fire department and of all of the persons employed therein," Chicago Mun.Code § 12–4 (1983), separately authorized

the practice of retiring sixty-three year old Deputy Commissioners. Without regard to the relevance of "practice" on this appeal, *see infra,* we find this line of argument unconvincing. First of all, it is doubtful that this section was intended to supersede or render superfluous the particularized and specific retirement ordinance relating to firefighters. Second, in its Local Rule 12 Response to Plaintiffs' Statement of Undisputed Facts, the City denied that the Fire Commissioner had the *authority* to allow another Deputy Fire Commissioner to defer retirement beyond age sixty-three. This concession vitiates the force of any argument rooted in the Fire Commissioner's purported authority to institute the particulars of the City's retirement scheme.

der. In the City's preferred locution, appellees are "double-rank" officers, or in appellees' phrasing, they possess a "reversionary interest" in the career service. That is, appellees at one time held career service positions from which they were granted leaves of absence, pursuant to City Personnel Rule XI, § 1(b), so that they could accept their Deputy Commissioner appointments. One need not rise from within the career service ranks of the fire department in order to be eligible for the post of Deputy Fire Commissioner, but one who does make the internal ascent must request a leave of absence without pay from his prior career service position or be subject to discharge. Significantly, in the City's eyes, an appointee may seek to return to the career service from leave and is entitled to reinstatement in his former position or a similar position, or, if no vacancy exists or if the department head does not desire to fill one, his name is placed on a reinstatement list according to his career service seniority. When a department head wishes to fill a vacancy, reinstatement lists are referred to after lay-off lists and before duty disability, promotional and general employment lists. *See* City Personnel Rule VIII. One's name is removed from a reinstatement list if one declines an offer of reinstatement or if no offer is made for twelve consecutive months. *See* City Personnel Rule VII, § 6(b).

The City does not directly argue that these privileges indicate that the 1983 ordinance's reference to firemen in the "career service" encompasses firemen who are not in the career service (but once were and could be again). Rather, the City argues that such an interpretation is a reasonable one that the City had in fact followed and actual practice corresponding with a reasonable reading of 1983 local law is all that § 623(j) demands. The City's creative reading of the exemption goes like this: the statute asks what retirement age was "in effect under applicable ... local law on March 3, 1983"; a particular retirement age is "in effect" if it is actually enforced; and it is in effect "under applicable

... law" if the actual enforcement is carried out, in the City's words, "under color of law." This is, in our opinion, a rather tortured construction, warranting little comment. "[T]he age of ... retirement in effect under applicable State or local law on March 3, 1983" plainly refers to the retirement age established, not merely arguable, under local law. The single, albeit somewhat inartful, phrase "in effect under applicable ... law" most obviously means "as provided by law" and does not denote a spongy, two-step inquiry of the sort the City suggests. Such is implicit in the cases applying the provision, *see, e.g., Petrelli v. City of Mount Vernon,* 9 F.3d 250 (2nd Cir.1993); *Gately v. Massachusetts,* 2 F.3d 1221 (1st Cir.1993); *Knight, supra; E.E.O.C. v. Illinois,* 986 F.2d 187 (7th Cir.1993); *McCann v. City of Chicago,* 968 F.2d 635 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 495, 121 L.Ed.2d 432 (1992), and is most consistent with the limited scope of the exemption that embodies Congress' desire to establish a distinct floor for retirement requirements that State and local governments could set during the grace period, *see Gately,* 2 F.3d at 1221.

At times the City seems to style its plausibility-plus-practice approach as an issue of deference to municipal interpretation of municipal law. The City suggests that its past practice with regard to the forced retirement of Deputy Fire Commissioners appointed from the career service constitutes an interpretation of the applicability of the 1983 ordinance to such persons which should be honored. The City argues, in other words, that we should deem that the involuntary retirement of ex-career-service Deputy Commissioners at age sixty-three was contemplated by the 1983 ordinance precisely *because* the City acted as though it was (and because such a read of the law would not be preposterous).[4] However, we need not pause to consider the extent to which such a practice did in fact exist (a matter that the parties dispute) and the degree to which it should inform our understanding of the applicability

---

**4.** The City does not refer to sources other than actual practice for the construction of the ordinance it now embraces. Of course, the City's litigatory urgings are due no special deference.

*Cf. Bowen v. Georgetown University Hospital,* 488 U.S. 204, 212–13, 109 S.Ct. 468, 473–74, 102 L.Ed.2d 493 (1988).

of the 1983 ordinance to the appellees, since reliance on past practice was disavowed by the City below. Quoting from the first page of the City's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment:

> The only question raised by the parties' cross-motions for summary judgment is a legal issue. The question is whether the City's 1988 mandatory retirement ordinance fits within the 1986 exemption from the [ADEA] allowing mandatory retirement of a "firefighter or a law enforcement officer [where] the individual has attained the age of . . . retirement in effect under applicable State or local law on March 3, 1983."

> *The City contends, and plaintiffs concede, that the City's mandatory retirement* practice *leading up to March 3, 1983 is irrelevant to that issue.* Instead, plaintiffs state, "the ADEA specifically refers to the law in effect on that date."

> *Thus it is the law, not practice or deviations from practice, that determine whether the City's mandatory retirement ordinance fits within the ADEA exemption.*

(italics added) (underlines in original) (citations omitted). Now, the City faults the district court for "refus[ing] to consider the age at which double-rank officers were actually being retired as of March 3, 1983," Brief for Appellant at 20–21, apparently believing that because it proffered (and responded to) alternative arguments referencing practice, the district court should have disregarded the City's primary statement of the scope of the appropriate inquiry. *See* Reply Brief for Appellant at 9–10. A litigant, however, cannot ask the district court to accept an argument, then turn around on appeal and claim the district court erred by doing so, even if the litigant later regrets the tactic. *See Barnett v. Stern*, 909 F.2d 973, 978 (7th Cir. 1990). If the orderly utilization of the trial and appellate processes demands that arguments not presented below are waived on appeal, *see Dempsey v. Atchison, Topeka & Santa Fe Ry. Co.*, 16 F.3d 832, 835 n. 3 (7th Cir.1994), the principle that arguments expressly disclaimed cannot be freshly invoked follows *a fortiori.*

As a result, we confine our inquiry to the language and structure of the ordinance and the City Personnel Rules and conclude without hesitation that the district court interpreted them correctly. As noted above, Deputy Fire Commissioners are unambiguously contemplated to fall outside the career service. *See* City Personnel Rule III, § 1; Chicago Mun.Code § 2–74–030(7) & (13). The City concedes as much, *see* Reply Brief of Appellant at 15, but asserts that we should disregard the obvious ramifications of these provisions (entitled "Appointments in the City Service: Kinds of Appointments" and "Categories of Positions in City Service" respectively) and instead extrapolate career service status for appellees from the nature of their old jobs and the elevated priority they continued to enjoy for return thereto (a priority, we note, that did not constitute a guarantee). When a statutory scheme is clear on its face, however, a court should not resort to secondary tools of construction. *See Connecticut Nat'l Bank v. Germain*, —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Because the Municipal Code and City Personnel Rules plainly classify all Deputy Fire Commissioners as outside the career service, our inquiry in this regard is over.

■ The City urges a wholly separate ground for reversal. It contends that Deputy Fire Commissioners are governmental "appointee[s] on the policymaking level" and thus, pursuant to 29 U.S.C. § 630(f), are not "employees" entitled to the protections of the ADEA. This argument, however, was also waived by the City's failure to adequately present it below.[5] In neither its "Memorandum in Support of its Motion for Summary Judgment" or its "Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment" did the City advance a § 630(f) theory of nonliability. Indeed, both parties, in their main submissions to the district court, treated the applicability of the § 623(j) exemption as the sole contested issue in the case. The

---

5. Appellees and *amicus* EEOC also assert that this position is wrong on the merits because Chicago Deputy Fire Commissioners are not appointed by an elected official (but rather by the Fire Commissioner, who himself is appointed by

the Mayor), citing *Tranello v. Frey*, 962 F.2d 244 (2nd Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 813, 121 L.Ed.2d 686 (1992). The City waives the mantle of *Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), in reply.

City apparently soon rued the decision not to press the policymaking exception as a ground for summary judgment in its favor,[6] for, in its reply memorandum, the City cited (ever so briefly) § 630(f). This came too late.[7] *See Allied Industrial Workers of America Local 322 v. Johnson Controls, Inc.,* 969 F.2d 290, 293 (7th Cir.1992). There being no other arguments (waived or nonwaived) to consider, the judgment of the district court is affirmed.

6. In its answer to the complaint, the City did list the § 630(f) policymaking exclusion as one of six "Additional Defenses." Of course, "[a] contention included in an answer, but not pressed before the district court, may not be presented on appeal as a ground for reversal." *Lazzara v. Howard A. Esser, Inc.,* 802 F.2d 260, 269 (7th Cir.1986).

7. The City argues, in effect, that appellees waived waiver of the § 630(f) issue by raising it themselves in their memorandum in opposition to the City's summary judgment motion. The City feels that through its reply brief it managed to adequately place a foot in a door that was opened by the appellees after originally being left shut by the City. The City, however, sees a crack where there is none. The City directs our attention to the appellees' argument below that the City's categorization of Deputy Fire Commissioners as part of the "Senior Executive Service" represents additional confirmation that Deputy Commissioners were not part of the career service (a point entirely germane to the § 623(j) issue as framed). Nowhere in the course of this page-long section did appellees discuss or even mention § 630(f) by name or in substance. So how

does this reference resurrect such a distinct and unraised claim? Well, the City explains, according to Municipal Code § 25–1.3 (1982) Senior Executive Service consists, among other things, of "positions which entail ... determinations of *policy.*" (The Service also consists of positions which entail the implementation of policies and positions requiring high technical or scientific skills). Seizing upon the appearance of the word policy in one of the statutory explanations and recognizing that the concept is relevant to many § 630(f) inquiries, the City apparently concludes that the appellees have resultingly characterized themselves as "policymakers" and thus have exposed themselves to the full panoply of policy-maker-related defenses. This is plainly not so, in two respects. First, appellees only were pointing out how the City itself classified Deputy Commissioners; they were not arguing the whys and wherefores of the classification that the City chose to make. Moreover, even if appellees had shouted from the hilltops that Deputy Commissioners were policymakers in arguing where they fall in the City's employment scheme, it was for the City in its main arguments before the district court to link any policy related characteristics of appellees' jobs to their possible federal law ramifications.