**Richard T. KOPEC, Plaintiff–Appellant,**

v.

**CITY OF ELMHURST, a municipal corporation, and Board of Fire and Police Commissioners of the City of Elmhurst, Defendants–Appellees.**

**No. 98–2858.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1999.

Decided Oct. 5, 1999.

Paul V. Esposito (argued), Lewis, Overbeck & Furman, Chicago, IL, for plaintiff-appellant.

Barbara J. Gosselar (argued), Kubiesa, Spiroff, Gosselar & Pieper, Oakbrook Terrace, IL, John H. Brechin, Itasca, IL, for defendant-appellee.

Before POSNER, Chief Judge, and FLAUM and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

At age 45, Richard Kopec sought to become a full-time police officer for the Chicago suburb of Elmhurst. The city declined to hire him, explaining that he had failed an oral interview. Kopec filed suit under the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), 29 U.S.C. § 621, *et seq.*, contending that the real reason for the city's refusal to hire him was his age. The district court granted summary judgment in favor of Elmhurst, concluding that the express terms of 29 U.S.C. § 623(j) retroactively exempted the city from the ban on age discrimination with respect to firefighters and law enforcement officers. *Kopec v. City of Elmhurst*, 8 F.Supp.2d 1082 (N.D.Ill.1998). We agree and affirm.

**I.**

In July 1985, at the age of 36, Kopec began work for Elmhurst as a part-time or auxiliary police officer. In most respects, the responsibilities of that job are comparable to that of a full-time police officer. Kopec wore a badge and carried a gun, patrolled the streets, apprehended those engaged in criminal mischief, and maintained the same fitness level as his full-time colleagues. At the time of his hire, however, Illinois law as well as the employment criteria of the Elmhurst Board of Fire and Police Commissioners (the "Board") required applicants for full-time employment to be younger than 35.

In the years preceding Kopec's hire, federal age discrimination law had undergone significant evolution insofar as public safety workers were concerned. As enacted in 1967, the ADEA did not apply to anyone employed by a state or local government. In 1974, Congress eliminated that exemption, P.L. 93–259, 88 Stat. 55, 74, but the Supreme Court's subsequent holding in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) (declaring unconstitutional the extension of wage and hour provisions of the Fair Labor Standards Act to employees of state and local governments), raised some doubt as to whether the Tenth Amendment permitted Congress to bind state and local governments to federal age discrimi-

nation rules. *See* David A. Knight, Note, *The Constitutionality of the ADEA after Usery*, 30 ARK.L.REV. 363 (1976); Ellen B. Spellman, Note, *National League of Cities v. Usery: Its Implications for the Equal Pay Act and the Age Discrimination in Employment Act*, 10 U. MICH.J.L.REF. 239 (1977); *but see E.E.O.C. v. County of Calumet*, 686 F.2d 1249, 1251–53 & n. 2 (7th Cir.1982), *and E.E.O.C. v. Elrod*, 674 F.2d 601, 603–12 (7th Cir.1982) (concluding that Congress properly exercised its authority under section 5 of the 14th Amendment when it extended ADEA to state and local employees). The Supreme Court settled the question in *E.E.O.C. v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), ruling that the ADEA could be applied to state law enforcement officers. That holding, of course, left open to challenge the many state and local laws which, like those of Illinois and Elmhurst, established maximum hiring and retirement ages for firefighters and police officers. States and municipalities wishing to preserve such limits would have to prove that age is a bona fide occupational qualification ("BFOQ") for public safety positions. *See id.* at 240, 103 S.Ct. at 1062; *see also United Auto. Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 201, 111 S.Ct. 1196, 1204, 113 L.Ed.2d 158 (1991) ("[t]he BFOQ defense is written narrowly, and this Court has read it narrowly"); *Johnson v. Mayor & City Council of Baltimore*, 472 U.S. 353, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985).

However, in 1986 (the year after Kopec was hired), Congress granted state and local governments a temporary exemption from the strictures of the ADEA for law enforcement and firefighting personnel. Pub.L. 99–592, 100 Stat. 3342; *see* 29 U.S.C. § 623(1) (1988) (later codified at § 623(j)); *Roche v. City of Chicago*, 24 F.3d 882, 883 (7th Cir.1994); *McCann v. City of Chicago*, 968 F.2d 635, 636 (7th Cir.1992), *cert. denied*, 506 U.S. 986, 113 S.Ct. 495, 121 L.Ed.2d 432 (1992). Essentially, the amendment permitted state and local governments which, as of March 3, 1983 (the day after the Supreme Court decided *E.E.O.C. v. Wyoming*), had in place age restrictions for firefighters and law enforcement officers, to continue to apply those restrictions. 29 U.S.C. § 623(i) (1988). By its terms, the amendment did not apply to pending cases and other causes of action arising prior to January 1, 1987, the effective date of the amendment. *See* 29 U.S.C. § 623 (1988), Note: Effective and Termination Dates of 1986 Amendments; 100 Stat. 3342, 3345. The amendment also included a sunset provision pursuant to which it would expire on December 31, 1993. 100 Stat. 3342.[1]

At the conclusion of this grace period, the ADEA once again became applicable to state and local police officers and firefighters. Hewing to the change in federal law, the Elmhurst Board in September of 1994 dropped its under–35 restriction for new police officers, and effective June 30, 1995, the State of Illinois did the same.

With the door now open to him, Kopec applied in October 1994 for a full-time position on the Elmhurst police force. Initially, things went well for him—he was ranked number 5 on a list of 87 eligible candidates. Indeed, by the time the Board conducted an oral interview of Kopec in September 1995, he was first on the eligibility list. However, by letter dated September 6, 1995, the Board informed Kopec that he had failed the interview. His

---

1. Within four years of the amendment's passage, the Secretary of Health and Human Services and the Equal Employment Opportunity Commission were to conduct a study as to the feasibility of testing the physical and mental fitness of law enforcement officers and firefighters, and the EEOC was to propose testing guidelines. *See* 100 Stat. 3342, 3343.

Although a study was eventually completed, no testing guidelines were ever proposed. *See* Martin Schiff, *The Age Discrimination in Employment Act: Whither the Bona Fide Occupational Qualification and Law Enforcement Exemptions?*, 67 ST. JOHN'S L.REV. 13, 15–16 (1993).

name was therefore removed from the eligibility list for full-time employment. The Board granted Kopec an opportunity to be heard on October 2, 1995, but it declined to change its decision. He subsequently obtained employment (at age 48) as a full-time officer with the Village of Addison.

On April 30, 1996, Kopec filed suit against the city after receiving his right-to-sue letter from the EEOC. He later added the Board as a defendant. The Board moved to dismiss his amended complaint as untimely, but the district court (which treated the motion as one for summary judgment) denied the request. *Kopec v. City of Elmhurst*, 966 F.Supp. 640 (N.D.Ill.1997) (Denlow, M.J.).

Meanwhile, Congress tinkered once again with the ADEA. In 1996 (after Kopec had filed suit), Congress amended the statute to reinstate the expired 1986 provision, thereby restoring the exemption for state and local governments that had age-based restrictions in place for firefighters and law enforcement workers as of March 3, 1983. Pub.L. 104–208, 110 Stat. 3009–23, presently codified at 29 U.S.C. 623(j). As amended, the statute provides, in relevant part:

It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State, or a political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken—

(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer, ... and the individual has attained—

(A) the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983; ...

\* \* \*

[and]

(2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

29 U.S.C.A. § 623(j). The 1996 amendment was retroactive to December 31, 1993, the date on which the 1986 provision had expired. *See* 29 U.S.C. § 623 (1999), Note: Effective and Termination Dates, 1996 Acts; 100 Stat. 3009–25. In contrast to the 1986 amendment, the 1996 amendment contained no sunset provision. Nor did it contain any language exempting pending litigation from the amendment.[2]

Taking advantage of this revision in the ADEA, Illinois (but not Elmhurst) subsequently reimposed an age limit for the employment of law enforcement personnel and firefighters. Effective August 17, 1997, more than two years after Elmhurst rejected Kopec for full-time employment, Illinois reinstated the under–35 rule for hiring. P.A. 90–481; *see* 65 ILCS 5/10–2.1–6(a).[3]

Invoking the 1996 amendment, the defendants moved for summary judgment on

2. As it had in 1986, Congress again called for a study as to the feasibility of testing the performance and capabilities of firefighters and law enforcement personnel and for the development of advisory guidelines for such testing. *See* 29 U.S.C. § 623 (1999), Note: Study and Guidelines for Performance Test; 110 Stat. 3009–24.

3. There is a lurking dispute over the relevance of Illinois law, because Elmhurst, as a home-rule unit of Illinois government, was not necessarily obliged to follow state law. *See Provenzano v. City of Des Plaines*, 256 Ill.App.3d

458, 195 Ill.Dec. 792, 629 N.E.2d 100, 101 (1993); Kopec Br. 24. It was free, in other words, to adopt its own rule regarding a maximum age of hire even if that rule conflicted with the State's, *Provenzano*, 195 Ill. Dec. 792, 629 N.E.2d at 101, although this would have required action by the Elmhurst city council, as opposed to the Board, *see* R.72 at 8, ¶ 17. However, as both the Board and the State had in place the same maximum age of hire as of March 3, 1983 (the date referenced by the ADEA as amended), we need not explore the issue.

Kopec's age-discrimination claim, arguing that even if their decision not to hire Kopec for full-time employment was based upon his age, the ADEA did not apply; and Judge Levin agreed.[4] As of March 3, 1983 (the date referenced by the statute), Illinois law required full-time police hires to be under the age of 35. Kopec was ten years older than that when he applied for full-time employment in 1994. Consequently, the express terms of section 623(j) exempted Elmhurst from the ADEA's ban on age discrimination. 8 F.Supp.2d at 1085.

Kopec posed two threshold arguments against application of the amendment, but the court found these unavailing. First, looking to the legislative history, Kopec argued that the 1996 amendment was merely an invitation for state and local governments to consider whether age-based restrictions were appropriate. The judge found it unnecessary to examine the history behind the amendment, however, given the absence of ambiguity in the statutory language. *Id.* at 1086. Kopec also emphasized that by 1994, both Illinois and Elmhurst had abandoned the under–35 rule; but the court found the status of state and local law at that time to be irrelevant.

> Plaintiff's claim rests on *federal* law, the ADEA. As to refusals to hire at the time Plaintiff was rejected by Defendants here, the relevant ADEA provision ... explicitly looks to state law as of a *specific date*, March 3, 1983. Thus, any later fluctuation of state law is irrelevant to Plaintiff's claim.

*Id.* (emphasis in original) (footnote omitted).

The amendment exempts only those hiring decisions which are made "pursuant to a bona fide hiring ... plan that is not a subterfuge to evade the purposes of this chapter," 29 U.S.C. § 623(j)(2). Kopec interpreted that language to require proof that an age restriction on the employment of policemen constitutes a bona fide occupational qualification. But Judge Levin reasoned that the purpose of the 1996 amendment was to exempt state and local governments from such a showing. Instead, the defendants need only show that their hiring plan did not amount to an attempt to circumvent the ADEA. *Id.* at 1087. Judge Levin found no evidence that Elmhurst's hiring plan amounted to a subterfuge. On the contrary, the city's plan included particularized employment criteria that were facially consistent with the law. *Id.*

The court rejected Kopec's contention that retroactive application of the 1996 amendment to his suit would violate the Fifth Amendment. Kopec lacked the vested property right necessary to support a Fifth Amendment claim, because his claim against Elmhurst and the Board had not yet been reduced to a judgment and because "[n]o person has a vested right in any general rule of law or policy of legislation entitling him to insist that it shall remain unchanged for his benefit." *Id.* at 1088, quoting *Chicago & Alton R.R. Co. v. Tranbarger*, 238 U.S. 67, 76, 35 S.Ct. 678, 681, 59 L.Ed. 1204 (1915). In any event, Kopec had not shown that the amendment lacked a rational basis. In the face of medical evidence indicating that age has a direct impact on a person's ability to work as a public safety officer, Congress had concluded that state and local governments required leeway in hiring such workers; thus the exemption from the requirements of the ADEA. Retroactive application of the 1996 exemption back to December 31, 1993 simply served to "close the gap" that had opened when the original exemption expired. 8 F.Supp.2d at 1088–89.

## II.

Our review of the district court's summary judgment ruling is, of course, de

---

4. The defendants argued alternatively that Kopec could not establish a prima facie case of age discrimination and, assuming that he could, that they had legitimate, nondiscrimi-natory reasons for declining to hire him. The district court did not reach these arguments because it agreed that the ADEA did not apply.

novo. *E.g., Chapple v. National Starch & Chem. Co. & Oil*, 178 F.3d 501, 504 (7th Cir.1999). Summary judgment decisions usually turn on the record and whether the evidence it contains, construed favorably to the non-movant, presents a triable question of fact. *See* FED.R.CIV.P. 56(c); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In this case, however, the facts pertinent to the application of the statute are not in issue. The dispute turns instead upon the interpretation of the statute, a legal matter over which our authority is plenary. *E.g., United States v. Wright*, 48 F.3d 254, 255 (7th Cir.1995).

### A.

█ Section 623(j)(1) provides that "[i]t shall not be unlawful" for a local government to refuse to hire someone as a firefighter or law enforcement officer on the basis of his age, if the applicant has exceeded the maximum age of hire that the local government had in effect as of March 3, 1983. Kopec interprets this provision to provide a municipality with a choice: It can rely on age-based hiring restrictions, so long as they are no more stringent than those in effect on March 3, 1983; but it can also drop such age limits, and if it elects to pursue that course, it subjects itself to liability under the ADEA in the event it later engages in age discrimination. Although both Elmhurst and Illinois had an under–35 rule in 1983, Elmhurst had dropped that restriction by the time Kopec· applied for full-time employment with the city in 1994, and the State of Illinois had done the same by the time Kopec was rejected and removed from the eligibility list in September 1995. So, as Kopec reads the statute, the city remains subject to suit under the ADEA if it refuses to hire a prospective police officer on the basis of his age, which is, of course, precisely what he alleges that Elmhurst did in his case.

█ Kopec's interpretation of the statute ignores its plain language, however. Section 623(j)(1)(A) focuses on the state of local law on March 3, 1983, not at the time the challenged hiring decision was made. *Cf. Roche v. City of Chicago, supra*, 24 F.3d at 884, 886 (§ 623(j)(1) did not apply to deputy fire commissioner, as municipal ordinance in effect on March 3, 1983 specifically excluded that position from age limit); *Gately v. Massachusetts*, 2 F.3d 1221, 1229–30 (1st Cir.1993) (1986 amendment did not permit Commonwealth to rely on stricter age limits adopted *after* 1983), *cert. denied*, 511 U.S. 1082, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994); *E.E.O.C. v. New York*, 846 F.Supp. 306 (S.D.N.Y.1994) (because no age limit applied to park patrol officers in 1983, State could not impose such limit in 1990). There is no dispute as to what either Illinois or Elmhurst required at that time—only those under the age of 35 were eligible for full-time employment as firefighting or law enforcement personnel. Consequently, under the straightforward terms of section 623(j)(1), "it shall not be unlawful" for the city to make an age-based hiring decision vis á vis an applicant like Kopec. It is true, as Kopec points out, that the statute does not *require* state and local governments to impose age limits. *See E.E.O.C. v. Illinois*, 986 F.2d 187, 188 (7th Cir.1993). Elmhurst, in fact, contends that it imposed no such limit at the time Kopec applied for a full-time position. But the lack of an age limit does not trigger ADEA coverage; in this regard, Kopec misapprehends the thrust of the 1996 amendment to the ADEA. The point of the amendment is not to give state and local governments a choice as to whether they wish to be subject to the ADEA's ban on age discrimination. The amendment offers safe harbor for *all* States and municipalities that had age limits in place in 1983, not just to those that have chosen to keep those restrictions in place in the ensuing years. *See Roche*, 24 F.3d at 884. In other words, regardless of whether a state or

local government has in practice abandoned its age limits for public safety personnel, as Elmhurst claims to have done, or instead continues to follow them, it is not subject to suit under the ADEA. Current local rules and practice may be relevant to whether a refused applicant has a remedy at the state or municipal level for age discrimination; but at the federal level, it is clear that there is none—unless, of course, there was no age limit in place as of March 3, 1983, *see Roche*, 24 F.3d at 884, or a local government has attempted to discriminate beyond the limits that were in place at that time, *see Gately*, 2 F.3d at 1229–30.

Section 623(j)(1) thus extinguishes Kopec's claim. As amended, the statute focuses on the state of local law as of one, and only one, date—March 3, 1983. Subsequent fluctuations in state and local rules and practice are, therefore, irrelevant. As of March 3, 1983, state and local law imposed a maximum age of 34 on applicants for full-time employment as police officers and firefighters. Kopec was older than that when he sought to become a full-time police officer for Elmhurst in 1994. The unambiguous terms of the 1996 amendment therefore foreclose relief under the ADEA. An exploration of the legislative history is accordingly unnecessary and inappropriate. *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808 n. 3, 109 S.Ct. 1500, 1504, 103 L.Ed.2d 891 (1989); *United States v. Silva*, 140 F.3d 1098, 1102 (7th Cir.1998).

### B.

■ A decision not to hire or to discharge a firefighter or law enforcement officer is exempt from the ADEA only if it was made "pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter." 29 U.S.C. § 623(j)(2). Imbuing "bona fide" with the meaning it carries in other, comparable provisions of the statute, a bona fide hiring plan presumably would be one that is genuine and pursuant to which actual hiring decisions are made. *Cf. Public Employees Retirement Sys. of Ohio v. Betts*, 492 U.S. 158, 166, 109 S.Ct. 2854, 2860, 106 L.Ed.2d 134 (1989) (employee benefit plan is "bona fide," *see* 29 U.S.C. § 623(f)(2), to extent that it . . . exists and pays benefits . . .), quoting *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 194, 98 S.Ct. 444, 446, 54 L.Ed.2d 402 (1977); *Smart v. Porter Paint Co.*, 630 F.2d 490, 494 (7th Cir.1980) (same). To the extent that a hiring plan includes a maximum age of hire, what little case law there is on the subject suggests that the plan will not be considered a "subterfuge to evade the purposes of [the] Act" so long as the age criterion pre-dates the ADEA (or its extension to the employees of state and local governments). *See Knight v. Georgia*, 992 F.2d 1541, 1545–47 (11th Cir.1993); *McCann v. City of Chicago*, 1990 WL 70415, at *4 (N.D.Ill. May 3, 1990); *see also Betts*, 492 U.S. at 168, 109 S.Ct. at 2862; *McMann*, 434 U.S. at 203, 98 S.Ct. at 450. As proof that its own hiring plan is bona fide and not a subterfuge to evade the purposes of the ADEA, Elmhurst points to the Board's rules and regulations, which (in the city's view) embody concrete, objective hiring criteria. R. 66 Ex. I at 3–6, § VIII, ¶¶ 1–10; *see* 8 F.Supp.2d at 1087.

■ Kopec insists that the city's hiring plan cannot be described as "bona fide" absent proof that the maximum hiring age amounts to a BFOQ, that is, a requirement "reasonably necessary to the normal operation" of the city's police force. 29 U.S.C. 623(f)(1). *See Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 419, 105 S.Ct. 2743, 2754, 86 L.Ed.2d 321 (1985); 29 C.F.R. § 1625.6(b) (1999). Kopec is dubious that Elmhurst would be able to show that the under–35 rule for hiring is a BFOQ: the city's police force includes many full-time officers who are over 35 and older; moreover, the city does not apply the rule to

part-time officers like Kopec, who perform essentially the same duties as full-time workers.[5]

■ We agree with Judge Levin, however, that Elmhurst need not prove that age is a BFOQ for its police officers. *See Knight*, 992 F.2d at 1547; *McCann v. City of Chicago*, 1991 WL 2537, at *3 (N.D.Ill. Jan. 8, 1991). Section 623(j) provides that the refusal to hire a law enforcement candidate "shall not be unlawful" so long as (1) the candidate has attained the maximum age of hire in effect under state or local law as of March 3, 1983 and (2) the decision is made pursuant to a hiring plan that is bona fide and not a subterfuge to evade the purposes of the ADEA. No oth-er criterion is specified. The term "bona fide" is used, but in reference to the hiring *plan* as opposed to the hiring *age*. Indeed, it would make no sense at all for Congress to have required a BFOQ showing. That requirement is already found in section 623(f)(1); thus, any employer covered by the ADEA can continue to use age as a hiring criterion so long as it is "reasonably necessary" to the operation of its business. Section 623(j) would therefore accomplish nothing if the exemption from the ADEA were conditioned upon a BFOQ showing; and we are loathe to adopt constructions that render a statutory provision superfluous. *E.g., Hohn v. United States*, 524 U.S. 236, 118 S.Ct. 1969, 1976, 141 L.Ed.2d 242 (1998).

5. Chief Judge Posner raises a number of intriguing issues in his dissent, all of them centering on whether Elmhurst made the decision not to hire Kopec full-time pursuant to a bona fide hiring plan. *See, e.g., post* at 20 ("The city should lose because there was no 'bona fide [age–35] hiring … plan' in force when Kopec was turned down."). Kopec himself has not raised these issues, however; and given the extremely limited application of the plain error doctrine in civil cases, *see, e.g., Frobose v. American Sav. & Loan Ass'n of Danville*, 152 F.3d 602, 613 (7th Cir.1998), we do not address them. The lone assertion that Kopec makes with respect to section 623(j)(2) is that Elmhurst must prove that a maximum hiring age constitutes a BFOQ, Kopec Br. 18–25; Reply Br. 5–7, an argument that we reject below.

Kopec does argue, as Judge Posner points out, that the 1996 amendment should not apply to this suit because, at the time Elmhurst turned down his application for full-time employment, neither Illinois nor the city had a maximum hiring age. *See* Kopec Br. 10–18; Reply Br. 1–5. In that respect, Kopec and our dissenting colleague sound the same theme. Their respective arguments, however, focus on entirely separate prongs of the statute. As both Kopec and the dissent recognize, the statute conditions the exemption from ADEA coverage on two distinct criteria: (1) that the plaintiff have obtained the maximum age of hire in effect as of March 3, 1983, and (2) that the decision not to hire the plaintiff have been made pursuant to a bona fide hiring plan. 29 U.S.C. § 623(j)(1) and (2). Kopec's argument as to the status of state and local law in 1994–95 is focused exclusively on prong (1). In his view, if Elmhurst and Illi-nois later abandoned a maximum age of hire, then they cannot rely on the age limit that was in place in 1983, period. *See, e.g.*, Kopec Br. 13 ("This language [of section 623(j)(1)] does not state that the laws in effect on March 3, 1983 control even if those laws had been repealed prior to the hiring decision."). This is an argument that finds no support in the plain language of section 623(j)(1) or in the dissent. *See post* at 22 ("The fact that an age–35 plan was in effect on March 3, 1983, is significant, because it is one of the conditions for docking in the safe harbor."). The dissent, on the other hand, argues that the abandonment of the maximum hiring age is pertinent to prong (2), the bona fide hiring plan. *Post* at 20, 22–24. In short, our colleague believes that Elmhurst cannot claim to have turned Kopec down pursuant to a bona fide hiring plan, as section 623(j)(2) requires, unless the hiring plan incorporated an age-based criterion. *Post* at 22–24. This is an *entirely* different theory, premised on different statutory language, and different case law, than Kopec has relied upon. It is not an argument that is obvious from the language of subsection (j)(2); it is not one that Kopec has ever pursued, below (*see* R. 76 at 7–11) or on appeal; it is not one, consequently, that Elmhurst has ever had the opportunity to address; and it is not one that the district court ever considered (*see* 8 F.Supp.2d at 1086–87). The one and only argument that Kopec raises with respect to the bona fide hiring plan requirement found in section 623(j)(2) is that age must amount to a BFOQ for Elmhurst's full-time police officers. And, lest there be any doubt, that is the sole argument we address today.

### C.

Kopec contends that application of the 1996 amendment to his suit, which of course he filed before Congress reinstated the exemption, deprives him of due process, in contravention of the Fifth Amendment. We have thus far assumed that the 1996 amendment does govern this case, but for good reason. The general rule is that a court will not retroactively apply a statute which (among other things) "diminishes substantive rights, or remedies," unless the legislature made clear that this was its wish. *Reyes–Hernandez v. I.N.S.*, 89 F.3d 490, 492 (7th Cir.1996), citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267–75, 114 S.Ct. 1483, 1498–1502, 128 L.Ed.2d 229 (1994). Congressional intent with respect to the retroactive application of section 623(j) was clear, however. The 1996 legislation specified an effective date of December 31, 1993, *see* 29 U.S.C. § 623 (1999), Note: Effective and Termination Dates (1996 Acts); 110 Stat. 3009–25, leaving no doubt that Congress meant for the amendment to apply to employment decisions that took place in the three-year interim between expiration of the 1986 amendment and enactment of the 1996 amendment. Granted, Congress did not state explicitly that the 1996 amendment would govern pending lawsuits, but that point strikes us as rather obvious in this context. The presumption against retroactivity reflects a concern about upsetting the expectations that the parties harbored when they engaged in the conduct *giving rise to* the suit, as opposed to their expectations at the time the suit *was filed*. *See Reyes–Hernandez*, 89 F.3d at 492. Moreover, given the relative dispatch with which the victims of age discrimination must act to enforce their rights, *see* 29 U.S.C. § 626(d), Congress in 1996 surely was aware of the likelihood that some suits based on events occurring after December 31, 1993 had already been filed. The fact that it made the statute retroactive to that date without exempting pending litigation (as it had in 1986) evinces an intent that the legislation apply to suits like Kopec's.

"[W]here the congressional intent is clear, it governs." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990).

Application of the 1996 amendment to this case, notwithstanding the apparent unfairness, does not violate Kopec's due process rights. The Supreme Court long ago confirmed that Congress has the authority "to effect a change in the law and to make that change controlling as to pending cases[.]" *Deck v. Peter Romein's Sons, Inc.*, 109 F.3d 383, 386 (7th Cir. 1997), citing *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). So long as retroactive application of the change is rationally related to a legitimate legislative purpose, the constraints of due process have been honored. *Deck*, 109 F.3d at 387–88 (collecting cases).

The 1996 amendment (like its 1986 predecessor) was a response to the extension of the ADEA to firefighters and law enforcement officers, the validity of which the Supreme Court settled in its 1983 *Wyoming* decision. That extension, as we noted at the outset, clashed with the many state and local rules which had established maximum hiring and retirement ages for these types of personnel. As there was yet no consensus as to the propriety of such age limits in the public safety context, Congress believed that a national standard presumptively barring them (that is, unless they met the narrow criteria for a BFOQ) was inappropriate.

> [T]he whole purpose of this bill, being as narrowly crafted as it is, is to say the law needs to be flexible enough to recognize that here is a particular instance in which our general policy of allowing people to function and perform as long as they feel they have the capacity to do so, in this narrow instance having to do with public safety, we will allow the decision to be made close to the actual activity taking place, and we will therefore give the State and local governments the ability to make the decisions that we on

the Federal level[6] deemed was an appropriate exemption to be made.

*Age Discrimination in Employment Amendments of [1996]: Hearing on S. 553 and H.R. 849 Before the Senate Com. on Labor and Human Resources,* 104th Cong. 32 (1996) (statement of Sen. Carol Moseley-Braun).

 The decision to afford state and local governments the flexibility to make their own judgments in this area, where the import of age is debated and lives are literally at stake, was a rational one. Forceful arguments certainly can be made as to the wisdom of enforcing a maximum age of hire, particularly as against an individual like Kopec, who by virtue of his lengthy part-time employment as an Elmhurst police officer had already demonstrated an ability to meet the demands of the job. The question confronting Congress, however, was who should evaluate the legitimacy of such criteria, and it could rationally have concluded that state and local governments, attuned to local needs, were better suited to make that assessment. *Cf. Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314–17, 96 S.Ct. 2562, 2567–69, 49 L.Ed.2d 520 (1976) (per curiam) (rejecting equal protection challenge to mandatory retirement age of 50 for police officers). Making the 1996 amendment retroactive to December 31, 1993 restored the law to its status in 1986, when Congress had first enacted the exemption, and prior to 1983, when *Wyoming* cast into doubt the validity of age limits for police officers and firefighters.

In this way, the retroactive aspect of the amendment both restored consistency to the law, closing the gap that had opened when the 1986 amendment expired, and furthered the purpose of the legislation by relieving state and local governments of the burden of defending lawsuits based on events that took place after the expiration of the 1986 amendment and prior to enactment of the 1996 amendment. *See Deck,* 109 F.3d at 389–90.[7]

We can certainly appreciate what a frustrating result this is for Kopec. He applied for employment with Elmhurst, and subsequently filed suit against the city, at a time when the ADEA protected him from age discrimination. However, the clear intent of Congress, when it made the 1996 amendment retroactive to December 31, 1993, was to extinguish causes of action that had arisen in the three years following the expiration of the 1986 amendment. As Kopec had no vested right in the law remaining unaltered, and Congress had a rational basis for legislating retroactively, we are obliged to honor its wish and affirm the dismissal of Kopec's suit.

### III.

The 1996 amendment to the ADEA, codified at 29 U.S.C. § 623(j), exempts Elmhurst's decision not to hire Kopec as a full-time police officer from the federal ban on age discrimination. The retroactive application of the amendment to Kopec's claim does not violate his due process rights. We therefore AFFIRM the district court's

6. [Footnote by the court] Federal public safety personnel are also exempt from the ADEA's protection. Federal firefighters must retire at age 55 or upon completing twenty years of service, whichever occurs later. Law enforcement officers must retire at age 57 or after twenty years of service, whichever occurs later. 5 U.S.C. § 8335(b).

7. We need not consider whether retroactive application of the statute to this suit results in a "manifest injustice" to Kopec. *See Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Kopec,* 8 F.Supp.2d at 1089. *Bradley*'s "man-ifest injustice" inquiry is one of a series of default tests that courts employ in situations where the legislative intent with respect to retroactivity is unclear. *See generally Landgraf,* 511 U.S. at 273–79, 114 S.Ct. at 1501–04; *Turkhan v. Perryman,* 188 F.3d 814 (7th Cir. 1999). But when "Congress has expressly prescribed the statute's proper reach[,] ... there is no need to resort to judicial default rules." *Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505. As we have noted, Congress made clear that the 1996 amendment was to reach back in time to December 31, 1993, when the 1986 amendment had expired.

decision to enter summary judgment in favor of Elmhurst.

POSNER, Chief Judge, dissenting.

This case raises an intricate question of statutory interpretation, but if one works through it carefully the answer is reasonably clear; it is not the answer the court gives; and it requires reversal. The court says in a footnote that the appellant did not make the right argument for reversal and so has waived it. If he had waived it, this would be a solid ground for affirming the appeal, but not for analyzing the issue incorrectly, as the court proceeds to do. And he didn't waive it. He devoted eight pages of his opening brief and five pages of his reply brief to the argument that he captioned "The 1996 Amendment Is Inapplicable Because Neither State Nor Local Law Established a Maximum Hiring Age As Of The Time Of The Hiring Decision," which is both correct and the key to the court's error. The law on which the dismissal of Kopec's suit is based permits, as I shall explain, the use of age as a hiring factor if the employer has a hiring plan authorizing such use; and the employer in this case, the City of Elmhurst, did not have such a hiring plan. Thus, as Kopec put it in his opening brief, "the effect of the decision below is to bind a police applicant's ADEA rights to state and local law *which no longer exists*" (emphasis added). For clarity and completeness, he should have added that because the city had no age-restricted plan in existence when he was turned down—the point he stresses in both his briefs—the city's action was not pursuant to a hiring plan that authorized the use of age as a factor in hiring. But if failure to make one's grounds of appeal perspicuous were a ground for waiver, we would have very few issues to decide.

On March 3, 1983, both the State of Illinois and the City of Elmhurst had a rule that an applicant for a full-time position as a police officer had to be under the age of 35 to be eligible. The legality of the rule was questionable, because federal law had since 1967 prohibited discrimination on grounds of age, Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, and the courts had been skeptical of general claims that youth was a bona fide occupational qualification (a defense under the Act) for public safety officers. See, e.g., *Orzel v. City of Wauwatosa Fire Dept.*, 697 F.2d 743, 748–56 (7th Cir.1983); *Hahn v. City of Buffalo*, 770 F.2d 12, 15–16 (2d Cir.1985).

In 1986, Congress amended the age discrimination law to permit states and their subdivisions to make hiring and firing decisions on the basis of age in the case of firemen and policemen. But this was on two conditions. First, that "the individual has attained the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983"— the date on which the Supreme Court in *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), held that the age discrimination law validly applied to state and local governments. Second, that the decision to hire or discharge the individual was made "pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this [Act]." 29 U.S.C. § 623(j) (1992).

So Elmhurst had a breather. But the 1986 amendment had a sunset provision pursuant to which the amendment expired automatically on December 31, 1993.

Richard Kopec, the plaintiff in this case, applied for a full-time position as an Elmhurst policeman in October of 1994. He was 45 years old. In 1995, by which time the state had rescinded its age–35 rule and the city had likewise rescinded its mirror-image rule, the city turned down Kopec's application, he claims on the basis of his age (the city disagrees). On April 30, 1996, he brought suit against the city—this suit—under the Age Discrimination in Employment Act.

On September 30, 1996, however, Congress reinstated the 1986 amendment—the amendment that had expired by its own

terms at the end of 1993—and made the reinstatement retroactive to the date of that expiration. 29 U.S.C. § 623(j). It was thus as if the 1986 amendment had contained no sunset provision but had simply continued in force to the present. On the basis of the new law, the district court dismissed Kopec's suit and this court now affirms that dismissal on the ground that since the city had on March 3, 1983, a rule against hiring full-time police officers if they were over 35, the reinstated 1983 amendment allows it to enforce the rule against Kopec even though it wasn't in effect either when he was turned down or, later, when he sued.

In the last act of this drama, the state, effective August 17, 1997, reinstated the age–35 hiring rule for policemen that it had repealed in 1995. 65 ILCS 5/10–2.1–6(a).

The city should lose because there was no "bona fide [age–35] hiring ... plan" in force when Kopec was turned down. The existence of such a plan is the sine qua non of the safe harbor created by the 1986 amendment to the ADEA and extended to the present by the 1996 amendment. There had been an age–35 hiring plan, but it was repealed before Kopec was turned down, and so the refusal to hire him cannot be justified by reference to it. The state has now reinstated its age–35 hiring plan. But it did this after Kopec was turned down; and while Illinois law on retroactivity is in a state of some muddle, it is reasonably clear that the reinstated rule would not be given retroactive effect by an Illinois state court.

Under the "vested rights" approach adopted by the Supreme Court of Illinois in *First of America Trust Co. v. Armstead*, 171 Ill.2d 282, 215 Ill.Dec. 639, 664 N.E.2d 36, 39–40 (1996), Kopec's right to complain about age discrimination in the city's refusal to hire him had vested when he brought his suit, and that was more than a year before the reinstated age–35 rule became effective. See *Harraz v. Snyder*, 283 Ill.App.3d 254, 218 Ill.Dec. 590, 669 N.E.2d

911, 917 (1996); *Link v. Venture Stores, Inc.*, 286 Ill.App.3d 977, 222 Ill.Dec. 283, 677 N.E.2d 486, 488 (1997). Courts which applied the vested-rights approach before *Armstead* held, it is true, that an Illinois statute could not give rise to a vested right, e.g., *Orlicki v. McCarthy*, 4 Ill.2d 342, 122 N.E.2d 513, 515 (1954); *People v. Stothoff*, 208 Ill.App.3d 500, 153 Ill.Dec. 462, 567 N.E.2d 420, 422 (1990), and for all I know this remains the law after *Armstead*. But the idea behind this principle appears to be that what Illinois giveth Illinois may taketh away, and so it is inapplicable to someone like Kopec who is claiming under a *federal* statute. This interpretation is bolstered by the fact that under the Illinois cases, common law rights, unlike Illinois statutory rights, can vest. *Cooper v. Chicago Transit Authority*, 224 Ill.App.3d 321, 166 Ill.Dec. 617, 586 N.E.2d 575, 577 (1991); *Young v. Chicago Transit Authority*, 209 Ill.App.3d 84, 154 Ill.Dec. 18, 568 N.E.2d 18, 23 (1990). The common law is a source of extralegislative rights, although the Illinois legislature can, of course, alter the common law of Illinois. From the standpoint of the Illinois legislature, rights created by federal law are also extralegislative and so presumably would be treated the same, for purposes of determining retroactivity, as common law rights. An old Illinois case, dealing with a right created by another state, supports this surmise. *Brennan v. Electrical Installation Co.*, 120 Ill.App. 461 (1905). I do not think it is necessary to consider whether there might be some federal interest in the determination of the retroactivity of a state rule that is in effect incorporated into a federal statute; certainly this is not an issue that the parties have addressed or that the court discusses.

Even under the older approach of Illinois law to issues of retroactivity, an approach that may have retained some vitality despite *Armstead*, see *People v. Digirolamo*, 179 Ill.2d 24, 227 Ill.Dec. 779, 688 N.E.2d 116, 128 (1997); *Ganci v. Blauvelt*, 294 Ill.App.3d 508, 228 Ill.

Dec. 890, 690 N.E.2d 649, 653 (1998); *Calamari v. Drammis*, 286 Ill.App.3d 420, 221 Ill.Dec. 760, 676 N.E.2d 281, 286–88 (1997); but see *Dardeen v. Heartland Manor, Inc.*, 186 Ill.2d 291, 238 Ill. Dec. 30, 710 N.E.2d 827, 830 (1999) (reaffirming *Armstead* without citing *Digirolamo*), the state's reinstated age–35 rule would not be applied retroactively. The old approach created a presumption, which nothing in the statute reinstating the age–35 rule rebuts, against the retroactive application of a statute that makes a substantive change in the law, as this one did.

The fact that an age–35 plan was in effect on March 3, 1983, is significant, because it is one of the conditions for docking in the safe harbor. But the other condition, equally important, is that the applicant have been turned down pursuant to a bona fide plan. There was no plan pursuant to which Kopec could have been turned down on the basis of his being older than 35.

I would be sympathetic to an argument by the city that despite the repeal of the state's law, it had in fact turned down Kopec pursuant to a bona fide age–35 hiring plan for police and firefighters. All that the sunsetting of the 1986 amendment did was to deprive the city of its safe harbor; it did not of its own force compel the abrogation of the hiring plan; and perhaps a plan repealed as a statute could continue as a policy. But the city does not argue that it turned down Kopec pursuant to an age–35 plan or policy. In fact, it denies that it turned him down because of his age at all. It says he was unqualified. That remains to be determined. Since the city denies having turned him down in accordance with a bona fide age–35 hiring plan, it cannot rely on the federal safe harbor provision. Cf. *Auriemma v. Rice*, 910 F.2d 1449, 1456–57 (7th Cir.1990) (en banc). That provision is applicable only to personnel actions taken pursuant to such plans.

Where my colleagues on this panel have gone astray is in supposing that the safe-harbor provision does not require that the hiring plan *pursuant to which the plaintiff was discriminated against* say anything about age. It is enough, they think, if there was an age-specific plan in force on March 3, 1983, even if the reference to age dropped out long before the complained-of discrimination. No case supports this unlikely proposition. The only case they cite for it, *Roche v. City of Chicago*, 24 F.3d 882, 884 (7th Cir.1994), held only that a city that didn't have an age rule in effect on March 3, 1983, could not take advantage of the exemption in the federal act by adopting such a rule later. In *Petrelli v. City of Mount Vernon*, 9 F.3d 250, 256 (2d Cir.1993), the age-specific law in force on March 3, 1983, remained in effect when the plaintiff was rejected, and was the basis for his rejection. See also *Knight v. Georgia*, 992 F.2d 1541, 1547 (11th Cir.1993). Suppose that at some point after March 3, 1983, the State of Illinois had enacted a statute forbidding its municipalities to fix a minimum age for applicants for public safety jobs; could the City of Elmhurst still rely on its age–35 rule to defeat Kopec's suit? The logic of my colleagues' position is that it could.

By not requiring that the plan in force when the plaintiff is discriminated against say anything about age, my colleagues do considerable violence to the language of the statute, which conditions the availability of the safe harbor on the discriminatory action having been "taken ... *pursuant* to a bona fide hiring ... plan." 29 U.S.C. § 623(j) (1992) (emphasis added). If the hiring plan said nothing about age, but merely that persons weighing more than 300 pounds were ineligible, in what sense could turning down a 200–pound applicant because he was over 35 be "pursuant" to the hiring plan? The problem would not be that the plan was not bona fide; I assume it would not have been designed as a subterfuge to evade the age discrimination law or any other law. The problem would be that the discrimination was "off

plan," as the City of Elmhurst concedes. My colleagues' position has the practical effect of immunizing all age discrimination by state or local governments that had an age–35 plan on March 3, 1983, even if they dropped age from their plan the next day, since all public agencies have "hiring plans," in the sense of a set of rules setting forth at least some criteria for hiring or not hiring.

I note finally that in interpreting another safe-harbor provision in the federal age discrimination law, one conditioned on the employer's "observ[ing] the terms of a bona fide employee benefit plan," 29 U.S.C.§ 623(f)(2), the courts including ours have uniformly held that to take advantage of the safe harbor the plan must explicitly address age. *Gonsalves v. Caterpillar Tractor Co.*, 634 F.2d 1065, 1066–67 (7th Cir.1980); *Smart v. Porter Paint Co.*, 630 F.2d 490, 493–94 (7th Cir.1980); *Sexton v. Beatrice Foods Co.*, 630 F.2d 478, 482 (7th Cir.1980); *EEOC v. Baltimore & Ohio R.R.*, 632 F.2d 1107, 1110–11 (4th Cir. 1980).

The judgment should be reversed and the case remanded for a determination of whether Kopec was turned down on account of his age.